[No. 4196.    Decided July 17, 1902.]

STATE OF WASHINGTON *on the Relation of Henry M. Thompson* v. SAMUEL H. NICHOLS *et al., as State Board of Equalization.*

TAXATION — BOARD OF EQUALIZATION — POWER TO RAISE AGGREGATE
    VALUATION OF PROPERTY IN STATE.

Under § 2, art. 7, of the constitution, which provides that the legislature shall provide by law a uniform and equal rate of

assessment and taxation on all property in the state, and shall prescribe such regulations by general law as shall secure a just valuation for taxation of all property, and under § 60 of the revenue act of 1897 as amended by Laws 1899, p. 288, which provides for a state board of equalization and empowers it to "examine and compare the returns of the assessment of the property in the several counties of the state and proceed to equalize the same, so that each county in the state shall pay its due and just proportions of the taxes for state purposes for such assessment year, according to the ratio the valuation of the property in each county bears to the total valuation of all the property in the state" and to that end "they shall classify all property, real and personal, and shall raise and lower the valuation of any class of property in any county to a value that shall be equal and uniform, so far as possible, in every part of the state, for the purpose of ascertaining the just amount of tax due from each county for state purposes," power is conferred upon the state board of equalization to raise the valuation of certain classes of property in certain counties, even if thereby the aggregate valuation of all the property in the state be increased.

SAME — ANNUAL EQUALIZATION.

Under Laws 1897, p. 136, §§ 1, 6, which provide that all real estate shall be subject to taxation upon equalized valuations thereof, fixed with reference thereto on the 1st day of March in each and every year in which the same shall be listed, and that all real estate subject to taxation shall be listed by the assessor each year in the detailed and assessment list, and under § 60 of the revenue act of 1897 as amended in 1899 which authorizes the state board of equalization at its annual meeting to raise or lower the valuation of any class of property in any county, the state board has power to change real estate valuations in odd numbered years, although Laws 1897, p. 140, § 6, provides that "in each odd numbered year the valuation of each tract [of real estate] for taxation shall be the same as the valuation thereof as equalized by the county board of equalization in the preceding year."

*Original Application for Writ of Review.*

*Myers & Warren* and *Martin & Grant,* for relator.

*W. B. Stratton,* Attorney-General, for respondents.

The opinion of the court was delivered by

ANDERS, J.—This is an original application for a writ of review, directed to the state board of equalization, commanding it to certify and transmit to this court a transcript of the records of its proceedings at its September, 1901, session.

The relator seeks by this proceeding to obtain a judgment of this court declaring the act of said board in raising the total valuation of the taxable property of the state, as shown by the abstracts returned by the various county auditors to the state board of equalization, and especially in raising the total valuation of taxable real property in Lincoln county, to be null and void. It is alleged in substance, among other things, in the affidavit filed in this court by the relator, and admitted by the demurrer thereto interposed by the attorney general on behalf of the defendant, that the said board of equalization, at its regular session at Olympia commencing on September 3, 1901, and continuing until September 21, 1901, then and there attempted to raise and increase, and did raise and increase, the total value of the taxable property of the state as fixed by the several county boards of equalization of this state, as shown by the abstracts and returns of the various county auditors on file with said board, in the sum of $22,036,395. It also appears by said affidavit that the valuation of the taxable property of the state was equalized by the state board of equalization at its regular session in September, 1900, and that the valuation then fixed and established was raised and increased by said board at its September, 1901, session, and that the valuation of the taxable real estate of Lincoln county was increased, in the sum of $1,615,674, over and above the valuation thereof as

11—29 Wash.

fixed by the state board of equalization in 1900, and exclusive of real estate becoming subject to taxation, and improvements upon real estate made since the assessment thereof in the year 1900. It further appears that the relator herein is, and for several years last past has been, a resident and tax payer in Lincoln county, and now owns a large amount of real and personal property in said county subject to taxation.

It is earnestly contended by the learned counsel for the relator that the action of the state board of equalization herein complained of was not warranted by law, or, in other words, that the state board had no authority or power to raise the aggregate valuation of the property of the state as fixed by the several county boards of equalization, and transmitted to the state auditor by the various county auditors. And if this contention be true, in point of fact, it must be conceded that that act of the board was and is null and void, for it is a firmly established principle of law that boards of equalization, whether county or state, possess only such powers as are conferred upon them either by statute or the constitution. But so long as such bodies keep within the limits fixed by legislative authority, and violate no provision of the constitution, their acts are not subject to review by the courts.

"The power of taxation," says Judge COOLEY, "is an incident of sovereignty, and is possessed by the government without being expressly conferred by the people. It is a legislative power, and when the people, by their constitutions, create a department of government upon which they confer the power to make laws, the power of taxation is conferred as part of the more general power. . . . Everything to which the legislative power extends may be the subject of taxation, whether it be person or property, or possession, franchise, or privilege,

or occupation or right. Nothing but express constitutional limitation upon legislative authority can exclude anything to which the authority extends from the grasp of the taxing power, if the legislature in its discretion shall at any time select it for revenue purposes. And not only is the power unlimited in its reach as to subjects, but in its very nature it acknowledges no limits, and may be carried to any extent which the government may find expedient. It may therefore be employed again and again upon the same subjects, even to the extent of exhaustion and destruction, and may thus become, in its exercise, a power to destroy." Cooley, Taxation (2d ed.), pp. 4, 5.

From the principles thus stated, it follows that our legislature, if not inhibited by the constitution, not only has the power to determine the subjects of taxation, but to prescribe the method of assessment and collection of taxes. And it is not disputed in this case that the legislature had the right to create a state board of equalization, and to designate its duties and the manner of performing them. Indeed, it is generally understood that such boards are necessary in order to secure uniformity and justness in the imposition of taxes upon the citizens of the state.

Counsel for the relator have cited several judicial decisions in support of their contention, but the question now under consideration must be determined in accordance with the provisions of our own constitution and statutes. Decisions based on statutes essentially different from ours cannot be deemed of controlling force here, except in so far as they announce principles of law of universal application. Section 1, of art. 7, of our constitution provides that:

"All property in the state, not exempt under the laws of the United States, or under this constitution, shall be

taxed in proportion to its value, to be ascertained as provided by law. The legislature shall provide by law for an annual tax sufficient, with other sources of revenue, to defray the estimated ordinary expenses of the state for each fiscal year. And for the purpose of paying the state debt, if there be any, the legislature shall provide for levying a tax annually, sufficient to pay the annual interest and principal of such debt within twenty years from the final passage of the law creating the debt."

And § 2 provides as follows:

"The legislature shall provide by law a uniform and equal rate of assessment and taxation on all property in the state, according to its value in money, and shall prescribe such regulations by general law as shall secure a just valuation for taxation of all property, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property. . . ."

It will be seen from the above quotations that the legislature is required by the constitution to provide by law such an annual tax as may be necessary to defray the ordinary expenses of the state; to provide for levying a tax annually for the payment of the interest and principal of the state debt, if any, within a designated time; to provide by law a uniform and equal rate of assessment and taxation on all taxable property of the state, according to its value in money, and to prescribe such regulations as shall secure a just valuation for taxation of all property. These provisions, it will be noticed, are very general in their character, and the particular provisions of the laws and regulations necessary to effectuate the requirements of the constitution are left to the judgment of the legislature. And that the legislature has endeavored to comply with the above stated mandates of the constitution will be made manifest by an examination of the revenue act of March 15, 1897 (Laws, p. 136; Bal.

Code, § 1655 *et seq.*), and the amendments thereof passed in 1899 and 1901.

Section 1 of the revenue law of 1897, which is still in force, provides, that:

"All real and personal property now existing, or that shall be hereafter created or brought into this state, shall be subject to assessment and taxation for the support of the state government, and for county, school, municipal or such other purposes as shall be designated by law, upon equalized valuations thereof, fixed with reference thereto on the first day of March at 12 o'clock meridian, in each and every year in which the same shall be listed, except such property as shall be expressly exempted therefrom by the provisions of law."

Section 6 of the revenue law is as follows:

"All real property in this state subject to taxation shall be listed and assessed under the provisions of this act in the year 1900, and biennially thereafter on every even numbered year, with reference to its value on the first day of March preceding the assessment. All personal property in this state subject to taxation shall be listed and assessed every year with reference to its value on the first day of March preceding the assessment: *Provided,* That the assessed value of all real property in this state as fixed by the assessment of 1897 shall be the assessed value until the year 1900: *Provided further,* That real estate becoming subject to taxation since the last assessment, and improvements upon real estate made since the last assessment, shall be assessed and included in the assessment list and tax roll in every odd numbered year: *And provided further,* That the destruction or removal of improvements since the last preceding assessment shall be duly noted by the county assessor, and the assessment and tax rolls herein provided made to conform to such changes: *Provided further,* That all real estate subject to taxation shall be listed by the assessor each year in the detailed and assessment list, and in each odd numbered year the valuation of each tract for tax-

ation shall be the same as the valuation thereof as equalized by the county board of equalization in the preceding year."

Upon the subject of equalization boards, and their powers and duties, we find the following provisions of law (Laws 1897, p. 162):

"Sec. 58. The county commissioners, or a majority of them, shall form a board for the equalization of the assessment of the property of the county. They shall meet for this purpose annually, on the first Monday in August, at the office of the auditor, who shall act as clerk of said board, and, having each taken an oath fairly and impartially to perform their duties as members of such board, they shall examine and compare the returns of the assessment of the property of the county, and proceed to equalize the same so that each tract or lot of real property and each article or class of personal property shall be entered on the assessment list at its true and fair value, subject to the following rules: *First,* they shall raise the valuation of each tract or lot of real property which in their opinion is returned below its true and fair value to such price or sum as they believe to be the true and fair value thereof, after at least five days' notice shall have been given in writing to the owner or agent; *second,* they shall reduce the valuation of each tract or lot which in their opinion is returned above its true and fair value to such price or sum as they believe to be the true and fair value thereof; *third,* they shall raise the valuation of each class of personal property which in their opinion is returned below its fair and true value to such price or sum as they believe to be the true and fair value thereof, and they shall raise the aggregate value of the personal property of each individual whenever they believe that such aggregate value is less than the true valuation of the taxable personal property possessed by such individual to such sum or amount as they believe to be the true value thereof, after at least five days' notice shall have been given in writing to the owner or agent thereof; *fourth,* they shall, upon com-

plaint in writing of any party aggrieved, being a non-resident of the county in which his property is assessed, reduce the valuation of each class of personal property enumerated in section 16 aforesaid, which in their opinion is returned above its true and fair value, to such price or sum as they believe to be the true and fair value thereof; and, upon like complaint, they shall reduce the aggregate valuation of the personal property of such individuals who, in their opinion, have been assessed at too large a sum, to such sum or amount as they believe was the true and fair value of his personal property. The county auditor shall keep an accurate journal or record of the proceedings and orders of said board in a book kept for that purpose, showing the facts and evidence upon which their action is based, and the said record shall be published the same as other proceedings of county commissioners, and a copy of such published proceedings shall be transmitted to the auditor of state, with the abstract of assessment hereinafter required. The county board of equalization may continue in session and adjourn from time to time during three weeks, and shall remain in session not less than three days, commencing on the said first Monday in August, but after final adjournment the county commissioners shall not have power to change the assessed valuation of the property of any person, or to reduce the aggregate amount of the assessed valuation of the taxable property of the county, but may correct errors in description or double assessments: *Provided,* That no taxes, except special taxes, shall be extended upon the tax rolls until the property valuations are equalized by the state board of equalization for the purpose of raising the state revenue."

"Sec. 60. [as amended in Laws 1899, p. 288]. The secretary of state, the commmissioner of public lands and the auditor of state shall constitute the board of equalization. The auditor shall be president of the board, and they shall remain in session not to exceed twenty days; may adjourn from day to day, and employ such clerical assistance as may be deemed necessary to facilitate its

labors: *Provided,* That the expense of such board shall not exceed the sum of $500 in any one year. The said board shall meet annually on the first Tuesday in September, at the office of the auditor of state, and shall examine and compare the returns of the assessment of the property in the several counties of the state and proceed to equalize the same, so that each county in the state shall pay its due and just proportions of the taxes for state purposes for such assessment year, according to the ratio the valuation of the property in each county bears to the total valuation of all the property in the state. *First,* They shall classify all property, real and personal, and shall raise and lower the valuation of any class of property in any county to a value that shall be equal and uniform, so far as possible, in every part of the state, for the purpose of ascertaining the just amount of tax due from each county for state purposes. *Second,* The secretary shall keep a full record of the proceedings of the board, and the same shall be published in the biennial report of the auditor of the state. *Third,* They shall have authority to adopt rules and regulations for the government of the board, and to enforce obedience to its orders in all matters in relation to the returns of county assessments, and the equalization of values by said board. The said board of equalization shall apportion the amount of tax for state purposes as required by law, to be raised in the state among the several counties therein, in proportion to the valuation of the taxable property therein for the year as equalized by the board, and shall also ascertain the gross amounts justly due from each county for military, state bond interest, and state bond sinking fund taxes, at rates and limitations fixed by law. It shall be the duty of the county auditor in each county when he shall have received the report of the state auditor, as provided in section 61 of this act, to determine the rates per cent. necessary to raise the taxes required for state purposes as determined by the state board of equalization, and place the same on the tax rolls of the county as provided by law."

Section 61, as amended by the act of 1899 (Laws 1899, p. 289), requires the state auditor, within ten days after the state board adjourns, to transmit to each county auditor a transcript of the proceedings of the board, specifying the amount to be levied and collected on the assessment books for state purposes for such year. It also requires the state auditor to certify to each county the amounts due to each fund, and unpaid, from such county, for the seventh preceding year, commencing with the tax levied for the year 1892; and each year thereafter the delinquent state taxes are required to be certified to the county auditors, and the sum added to the amount levied for the current year. It is provided in § 62 (Laws 1897, p. 166) that:

"The amount of state tax shall be levied by the state board of equalization and the rate be ascertained by the several county auditors on the valuation in their respective counties: *Provided,* That the amount levied in any one year shall not, for general state purposes, exceed three mills on a dollar, property valuation of the entire state."

This section further provides that "the amount of levy, as determined annually by the state board, shall be certified by the auditor of state to each county auditor on or before the last Monday of September of each year." The duties of the several county assessors are specifically prescribed in the revenue law. The powers and duties of the various county auditors and treasurers are also specified in said act of 1897, in so far as they relate to taxation. The county assessor is furnished with a printed detail list wherein a designation of the different kinds of property subject to taxation is set forth in a convenient and proper form, and in which the assessor is required to set down in the proper column, opposite the several kinds

and descriptions of property, the true and fair value of such property, and to file such lists with the clerk of the county board of equalization, bound in book form, for the purpose of equalization by the said board. The assessor is also required to verify such returns by affidavit in accordance with a form prescribed by the statute; and, "after the same has been duly equalized by the county and state board of equalization, the same shall be delivered to the county auditor, who shall then extend the amount as levied by the state and county boards upon the said detail and assessment lists as by law provided." See Laws 1897, p. 160, § 54. In § 56 of this act of 1897 (Laws, p. 161), it is provided that the county auditor shall carefully examine the assessment books when returned to him by the assessor, and, if he discovers that the assessment of any property has been omitted, he shall enter the same upon the proper list, and forthwith notify the assessor making such omission, who shall immediately proceed to ascertain the value thereof, and correct his original return; and, in case of the inability or neglect of the assessor to perform his duty, the auditor shall ascertain the value of such property, and make the necessary corrections. Section 42 of the same act (Laws 1897, p. 155) declares that all property shall be assessed at its true and fair value in money, and that the true cash value of property shall be that value at which the property would be taken in payment of a just debt from a solvent debtor. It also declares that, in assessing real property, the value of the land and the value of the improvements thereon shall be separately determined, and that in valuing any real property on which there is a coal or other mine, or stone or other quarry, the same shall be valued at such a price as such property, including the mine or quarry, would bring at a fair voluntary sale for cash.

It will appear from an examination of the provisions of the revenue law above referred to that the boards of equalization—county and state—are constituent parts of the machinery of taxation, and that each is vested with certain powers, and charged with special duties. It is true that such boards are not specifically provided for, or even mentioned, in the constitution, but it does not follow from that fact that the legislature was without power to create them, and prescribe their powers and duties. There is nothing in the constitution forbidding the establishment of such boards, and it was therefore within the province of the legislature to create them, if it deemed them necessary, in order to secure that uniform and equal rate of assessment and taxation on all property in the state according to its value in money, and the just valuation of all property, required by the constitution. In fact, as we have already stated, it is not claimed by the relator that the legislature had not the power to establish these boards of equalization and designate their duties. The contention is, as we have said, that the state board exceeded its power and jurisdiction in raising the aggregate valuations as returned by the county boards of equalization.

It is insisted, on the part of the relator, that the powers of the state board are restricted by law to a mere equalization of the aggregate valuation of the property in the several counties, as fixed by the county boards, and that it has no right or power to increase the total valuation of the property of the state so fixed upon it; and it is argued, in effect, that when the state board raised, as it did in this instance, the valuation of the property in some of the counties of the state as returned to it by the respective county auditors, and adopted the valuations returned from other counties as the true and just valuations therein, it failed to exercise its proper functions, and assumed,

without authority of law, to act in the capacity of assessor; that if the board deemed it proper and just to raise the valuations in certain counties, and accordingly did so, it was incumbent upon it to decrease the valuations in the remaining counties in an equal amount, because in no other way could equalization be effected at all. And this position seems to be in accord with the ruling in the cases of *People ex rel. Crawford v. Lothrop,* 3 Colo. 428; *State ex rel. Wallace v. Board of Equalization,* 18 Mont. 473 (46 Pac. 266); *Wells, Fargo & Co. v. State Board,* 56 Cal. 194, and some others cited by counsel for the relator. The first two cases above mentioned are perhaps more favorable to relator's contention than any of the other cases cited by him, but both of those decisions are based upon constitutional and statutory provisions materially different from ours, and therefore cannot be considered as authoritative here. The decision in the Montana case, it will be noticed, was rested largely, if not wholly, upon the provision of the constitution of Montana, which had been adopted from the Colorado constitution after it had been interpreted by the supreme court of the latter state. The court proceeded upon the presumption that the framers of the Montana constitution were "conversant with, and designed to adopt, also," the interpretation given to the section in Colorado. See *State ex rel. State Board of Equalization v. Fortune,* 24 Mont. 154 (60 Pac. 1086). In the case last cited, the Montana court adhered to the doctrine announced in *State v. Board, supra,* but it appears that the chief justice concurred in the opinion for the sole reason that he considered himself bound to do so by the former decision of the court. He said:

"I concur in the foregoing opinion solely on the ground of *stare decisis.* If the question involved were a new one in this state, I should be in favor of disregarding the con-

struction given to the section of the constitution by the supreme court of Colorado in *People v. Lothrop,* 3 Colo. 428, and followed by this court in *State ex rel. Wallace v. State Board of Equalization,* 18 Mont. 473, 46 Pac. 266, as demonstrably wrong."

It was held in that case that the state board of equalization was without power to change the valuation of any class of property, its authority being limited to raising or lowering the entire assessment of a county. But such is not the case in this state, for our state board is not only authorized, but required, to "classify all property, real and personal, and to raise and [or] lower the valuation of any class of property in any county to a value that shall be equal and uniform, so far as possible, in every part of the state, for the purpose of ascertaining the just amount due from each county for state purposes." § 60, *supra.* And the records of the proceedings of the board at its 1901 session show that it classified all property in the state, and raised the valuation of certain classes of property in certain counties to such a sum or amount as it deemed necessary to secure an equal and uniform valuation, so far as possible, throughout the state. This it certainly had the right to do, under the statute, and the fact that this act of the board resulted in increasing the aggregate value of all the property in the state, as returned by the county boards, is no argument against its validity. After a careful examination and consideration of the provisions of the revenue laws and the constitution applicable to the question now before us, we are convinced that the contention of the relator now under consideration is clearly untenable.

Under the constitution and laws of Utah, which are almost identical with the provisions of our constitution and statutes on the subject in question, the supreme court

of that state, in the case of *State ex rel. Cunningham v. State Board of Equalization*, 16 Utah, 86 (50 Pac. 615), held that the state board of equalization had power, if necessary, for the purpose of equalization, either to raise or lower the aggregate valuation of all the counties in the state. That case is a well considered one, and the decision therein is, in our judgment, peculiarly applicable to the case at bar. The cases from Colorado and Montana, above mentioned, were pressed upon the attention of the court in that case, but it declined to follow them for the reason that they were not in point under the provisions of the constitution and laws of Utah relating to revenue and taxation. See, also *Salt Lake City v. Armstrong*, 15 Utah, 472 (49 Pac. 641); *Wallace v. Bullen*, 6 Okl. 17 (52 Pac. 954); Same case on rehearing, 6 Okl. 757 (54 Pac. 974); *Webb v. Renfrew*, 7 Okl. 198 (54 Pac. 448).

In *Wallace v. Bullen, supra,* several of the authorities cited by the relator are reviewed and distinguished; and, on rehearing, the court in that case expressly overruled the case of *Gray v. Stiles*, 6 Okl. 455 (49 Pac. 1083), for the reason that the law was not correctly stated therein, and followed the Utah case of *State ex rel. Cunningham v. Thomas*, 16 Utah, 86 (50 Pac. 615).

It is further contended by the relator that the state board of equalization had no power to increase or change real estate valuations in the year 1901, even if it had the power to do so in the year 1900; having exercised such power in the latter year. But it will be observed that § 1 of the revenue law, hereinbefore set out, provides that "all real estate . . . shall be subject to taxation . . . upon equalized valuations thereof, fixed with reference thereto on the first day of March . . . in each and every year in which the same shall be *listed*."·

And § 6 (last proviso) declares that all real estate subject to taxation shall be listed by the assessor each year in the detailed and assessment list. And by reading these two sections, in connection with §§ 58 and 60, *supra*, it will appear that all real estate must be *listed* each year, and equalized by the county board of equalization, and also by the state board, each year.

We conclude that the state board had the power to do the things complained of herein, and the demurrer to the affidavit is therefore sustained, and the application for the writ of review denied.

HADLEY, FULLERTON, MOUNT, WHITE and DUNBAR, JJ., concur.

REAVIS, C. J., concurs in the result.