[No. 28390.    Department Two.    February 13, 1942.]

PORT OF SEATTLE, *Respondent*, v. ANTOINETTE LUKETA, *Appellant*.[1]

*Monheimer & Griffin,* for appellant.

*Fairbrook & Williams,* for respondent.

BLAKE, J.—Plaintiff rented to defendant two locker rooms (Nos. 303 and 304) in what was known as the new net shed at the Salmon Bay Terminal for a term beginning September 15, 1937, and ending September 15, 1938.    Thereafter, the same locker rooms were rented to defendant for an additional term ending September 15, 1939.    Before the end of that term, plaintiff, without assigning any reason, notified defendant to vacate the premises on the expiration date.

[1]Reported in 121 P. (2d) 951.

Defendant refused to vacate and tendered the amount of rental for another year. Plaintiff declined the tender and brought this action in unlawful detainer. From judgment directing that a writ of restitution issue, defendant appeals.

The building in which the locker rooms are situated is devoted to the storage of nets and gear of purse seine fishermen. It is two hundred feet long and sixty feet wide. A corridor extends the length of the building down the middle. A tier of locker rooms is on each side of this corridor. There is also a tier of locker rooms along the outer wall of the building. These locker rooms are accessible through doors in the outer wall. Room 304 was one such. Room 303 opened off the corridor. It was accessible both from the corridor and through a door connecting with room 304. Appellant had exclusive possession of the two rooms and free access to both by means of the outer door to 304. However, she could not obtain access to 303 from the corridor without passing through the main door of the building, the keys to which respondent retained in its exclusive possession. The respondent, however, retained no keys to the locker rooms and had no access to them. It had no specific knowledge of what was stored in them. The appellant was free to store and remove her nets and gear without let or hindrance by respondent.

Such an arrangement—where an occupant of a locker room has exclusive possession and the warehouseman does not have control or possession of the goods stored—has been held to create the relationship of landlord and tenant between the parties. *Bash v. Reading Cold Storage & Ice Co.*, 100 Pa. Super. Ct. 359. It is upon this theory—the right of a landlord to rent to whom he will—that respondent justified its refusal to rent storage space to appellant for the year begin-

ning September 15, 1939. We have held, however, that such an arrangement creates a relationship more akin to that of bailor and bailee. *Luketa v. Port of Seattle,* 186 Wash. 609, 59 P. (2d) 299. See, also, *McDonald v. Perkins & Co.,* 133 Wash. 622, 234 Pac. 456, 40 A. L. R. 859.

And, in the light of chapter 154, Laws of 1933, p. 554, as amended by chapter 202, Laws of 1937, p. 981 (Rem. Rev. Stat. (Sup.), § 11569-1 [P. C. § 7202-21], *et seq.*), this view of the relationship created under such circumstances would seem imperative. Section one of that act provides:

"The term 'storage warehouse' whenever used in this act shall be held to mean and include a building or structure or any part thereof in which goods, wares or merchandise is received for storage for compensation within the corporate limits of any county of this state having a population of thirty thousand or more, . . . "

Continuing, the section specifies certain exceptions and exclusions, none of which, however, have any bearing upon the situation presented in this case. The terms of the statute above quoted are comprehensive, and make no distinction between warehousemen who actually receive and retain control of goods stored and those who rent locker rooms which, with their contents, are under the exclusive control of the occupants.

That respondent was operating a "storage warehouse" as defined by the act seems too plain for argument. Indeed, respondent itself recognized the fact by filing, in 1937, 1938, and 1939, with the department of public service schedules of rates as required by § 3 of the 1933 act, p. 555 (Rem. Rev. Stat. (Sup.), § 11569-3 [P. C. § 7202-23]), and by Rem. Rev. Stat., § 9692 [P. C. § 4475].

Since, then, respondent is operating a "storage warehouse" as defined by Rem. Rev. Stat. (Sup.), § 11569-1, it is amenable to such regulations as the state may impose. Appellant invokes Rem. Rev. Stat., § 10386 [P. C. § 5577], which provides:

"No wharfinger or warehouseman shall make or grant any undue or unreasonable preference or advantage to any person, corporation or locality, or to any particular description of service in any respect whatsoever, or subject any particular person, corporation or locality or any particular description of service or traffic to any undue or unreasonable prejudice or disadvantage in any respect whatever."

This statute is but a declaration of the common-law rule that a public warehouseman must treat with absolute impartiality all who apply for service. 67 C. J. 449, § 12. He cannot refuse to receive goods of the class he is authorized to receive and store. 67 C. J. 451, § 15. *Nash v. Page,* 80 Ky. 539, 44 Am. Rep. 490; *Gray v. Central Warehouse Co.,* 181 N. C. 166, 106 S. E. 657.

In its brief, by way of argument, respondent presupposes conditions which might have justified it in refusing to continue to rent locker space to appellant. But there is no evidence in the record that tends to support the supposititious case. On the record made, respondent asserts a landlord's right to pick and choose its tenants. But, under the statute (Rem. Rev. Stat. (Sup.), § 11569-1), it is not a landlord. And, under Rem. Rev. Stat., § 10386, as an operator of a storage warehouse, it is bound not to "subject any particular person . . . to any undue or unreasonable prejudice or disadvantage in any respect whatever."

Having storage space available, respondent was guilty of unlawful discrimination against appellant when it refused, without any just cause or reason, to

extend her occupancy of locker rooms 303 and 304 for another year.

The judgment is reversed, and the cause remanded with direction to dismiss the action.

DRIVER, SIMPSON, and JEFFERS, JJ., concur.

BEALS, J., dissents.