[No. 35726. Department Two. December 14, 1961.]

WASHINGTON-OREGON SHIPPERS COOPERATIVE ASSOCIATION, INC., *Respondent*, v. WILLIAM S. SCHUMACHER *et al., as State Tax Commissioners, Appellants.**

*Reported in 367 P. (2d) 112.

*The Attorney General* and *Timothy R. Malone, Assistant,* for appellants.

*Wright, Booth & Beresford, Robert O. Beresford, Fred H. Tolan,* and *Donald P. Lehne,* for respondent.

FINLEY, C. J.—In this lawsuit respondent, Washington-Oregon Shippers Cooperative Association, Inc., (hereinafter referred to as WOSCA) is seeking to enjoin the State Tax Commission from collecting certain business and occupation taxes. The taxes were assessed pursuant to those provisions of chapter 180, Laws of 1935 (as amended), which are presently codified as RCW 82.04.220 and RCW 82.04.290. WOSCA alleged that its business is entirely interstate in character, and that the tax amounted to (1) a direct burden on interstate commerce, violative of the commerce clause of the federal constitution; and (2) a taking of property without due process of law in violation of the fourteenth amendment of the federal constitution and Art. I, § 3, of the Washington State Constitution. The trial court enjoined collection of the taxes, holding them to be a direct burden on interstate commerce.

Much of the following information describing the functions and operations of WOSCA is taken from the facts as stipulated by the parties litigant in trial court.

WOSCA is a nonprofit corporation, organized and existing under and by virtue of the laws of the state of Washington. Corporate membership consists of 119 business entities, with principal places of business in either Washington or Oregon—primarily in Seattle or Portland. Each member is engaged in a type of business involving acquisition and transportation of materials or products from sources outside the state of Washington. Carload, truckload, or volume rates usually are most advantageous; but members shipping individually often cannot order in quantities large enough to secure such lower rates. WOSCA was formed to provide services or the means whereby members would be able to consolidate shipments in order to gain the advantage of the volume (usually carload) rates. WOSCA handles no shipments of merchandise originating in Washington, and its services are available only to its members. WOSCA qualifies for an exemption under 49 U. S. C. § 1002 (c), and, there-

fore, is not subject to regulation by the Interstate Commerce Commission as a *freight forwarder.*

Each corporate member orders (independently of WOSCA) whatever commodities it desires. Thereupon, the commodities are shipped from the seller in care of WOSCA to loading or consolidation points in various eastern, midwestern and southern cities. An independent consolidator at the loading point, working pursuant to a contract with WOSCA, arranges the less-than-carload shipments in carload lots and directs the shipments to members (in care of WOSCA) at a convenient point in Washington or Oregon. (As a matter of practice, about 80% of the shipments come to Washington for the reason that most of the 119 members are established here. In this appeal we are not concerned with transactions involving Oregon members.) The shipments received at the designated points in Washington are sorted and delivered to the purchasing members by a distributor (who also works under a contractual arrangement with WOSCA). WOSCA has leased a warehouse in Seattle, where volume is greatest, for storage of the freight until distribution. Ownership of the merchandise in transit depends upon the contractual relationships between the buyers and sellers. Accordingly, each member handles its own claims when damage in shipment occurs.

A bill of lading and a manifest, setting forth the ownership and description of various components making up the carload, are prepared by the consolidator at loading point and delivered to the railroad or other carrier. A duplicate of each is sent to the firm of Fred H. Tolan & Associates, in Seattle, which functions as "Traffic Consultant." This firm, pursuant to a contract with WOSCA, handles the latter's records, pays freight and other charges due the carriers and independent contractors out of the operating capital of WOSCA, and also bills individual members for services performed.

The billings to individual members cover (a) the amount of freight, (b) the amount of the consolidator's charge, including any advance made by the consolidator for the individual member, and (c) an agreed amount per hundred-

weight for services performed by Fred H. Tolan & Associates. The billings also include various service charges, as itemized in the Appendix attached hereto. Miscellaneous expenses are added to the bill of each member according to an agreed apportionment arrangement. Payments are made to WOSCA, and deposited in its account.

The operating capital of WOSCA is derived as follows: Each member is required to pay an amount equal to its best estimate of its largest weekly freight bill. If such estimate proves to be inadequate for covering expenses of operation, the member is so advised promptly and requested to make a larger contribution. As long as members make payments promptly, the fund thus established remains substantially intact. Any withdrawing member receives return of his deposit or whatever portion is left of it. There are no shares of stock. In the event excess money accumulates, each member receives a "dividend," apportioned according to the tonnage shipped.

Fred H. Tolan & Associates pay the usual state and city business and occupations taxes on all sums paid for services rendered. The independent consolidators and distributors pay their own business and occupation taxes if required in their jurisdictions.

WOSCA owns no property. Its work is performed by independent contractors, except for corporate policy and planning decisions made by the Board of Trustees. No office is maintained; the contract with Fred H. Tolan & Associates requires that firm to provide all office supplies and equipment. The corporate name of WOSCA has two telephone listings in Seattle: one at the warehouse leased by WOSCA; the other at the offices of Fred H. Tolan & Associates.

The State Tax Commission originally sought to collect the tax by measuring all sums paid by each member of WOSCA for freight bills, together with service charges added thereto. However, no tax was claimed measured by that portion of the billing representing advances by consolidators at loading points. The Tax Commission has abandoned a portion of its claim for taxes, since it is appealing only insofar as the trial court judgment enjoins the collec-

tion of taxes measured by those gross proceeds which (1) are obtained from Washington members of WOSCA for services rendered by WOSCA, and which (2) are in addition to amounts paid by these members for the actual transportation charges by carriers. The tax commission, then, is maintaining that all proceeds derived from charges for services itemized in the Appendix attached hereto, which are paid to WOSCA by its Washington members, are properly includable in the measure of the tax.

It will be observed that some of the services included in the measure of the tax involve activity occurring outside of the state of Washington. Logically, perhaps, the question of whether or not the state has jurisdiction under the due process clauses of the federal and state constitutions to tax proceeds derived as a result of those activities should be answered before the commerce clause implications are discussed. Is the tax fairly apportioned to services rendered in Washington? Or, to put it another way, does the tax amount to an attempt by the State of Washington to extend its taxing powers outside of its boundaries?

■ WOSCA makes no purchases or sales in interstate commerce. The only real activity performed by WOSCA, except for the policy-making function of its Board of Trustees, is that of entering into contractual arrangements with independent contractors. Although some of the contracts entered into by WOSCA concern activities occurring outside of the state, WOSCA is not engaged in these activities; it merely procures them as a service for its members. Such service also includes: use of the corporate name when shipping items; immediate payment of shipping charges; providing all risk insurance; door delivery service; regular billing service, enabling satisfaction of all charges with one payment. The performance of these services is a local activity, even though the services are rendered in connection with an interstate transaction. See *Mohegan International Corp. v. City of New York* (1961), 9 N. Y. (2d) 69, 172 N. E. (2d) 546; *cert. den.* 366 U. S. 764, 6 L. Ed. (2d) 854, 81 S. Ct. 671 (1961). Local activity far more obscure was held

validly taxable in *B. F. Goodrich v. State* (1951), 38 Wn. (2d) 663, 231 P. (2d) 325; *cert. den.* 342 U. S. 876.

■ That transactions occur between WOSCA and its members cannot be denied. WOSCA promotes and provides services, and members make payments to WOSCA for these services. It is axiomatic that a corporation exists as an entity, separate and apart from its members. The gross receipts received from these transactions between the corporation and the members may be taxed, because WOSCA is providing services and is thereby engaging in business within the state. The fact that a portion of the service provided by WOSCA involves activities which occur outside of the state is not controlling.

In *Wisconsin v. J. C. Penney Co.* (1940), 311 U. S. 435, 85 L. Ed. 267, 61 S. Ct. 246, 130 A. L. R. 1229, *reh. den.* 312 U. S. 712, 85 L. Ed. 1143, 61 S. Ct. 444, the court said:

" . . . The fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction."

Furthermore, the member companies which eventually will bear the burden of the tax are located within the state of Washington. The object and effect of the organization is to produce a local competitive advantage rather than to benefit those on the other end of the interstate transaction. This was recognized in *Pacific Coast Wholesaler's v. United States* (1949), 81 F. Supp. 991, D. C. Cal.; aff'd. 338 U. S. 689, 94 L. Ed. 474, 70 S. Ct. 411 (1950), where an operation similar to that of WOSCA was held within the exemption of 49 U. S. C. § 1002(c). The court stated:

" . . . both the purpose and the result of the transaction is not to benefit the shipper but to reduce transportation costs to the member through savings effected in cooperation with other members who likewise employ the association as a transportation agent."

To invalidate the tax on the basis that the state is extending its taxing power beyond its jurisdiction discounts too severely the following factors: (1) WOSCA enjoys the benefits of Washington law by virtue of its creation;

(2) WOSCA performs substantially all of its services within the boundaries of the state of Washington; (3) WOSCA is composed of members who are all established in the state of Washington; (4) the effect of the tax would be borne primarily in the state of Washington; in other states it would be almost imperceptible. We hold that the tax is not invalid on the ground of due process.

The next question for discussion is whether commerce clause implications prevent the state from assessing a tax measured by gross receipts received by WOSCA for the indicated services.

WOSCA relies on *Puget Sound Stevedoring Co. v. Tax Commission* (1937), 302 U. S. 90, 82 L. Ed. 68, 58 S. Ct. 72, for the proposition that the activities of WOSCA are so closely connected with interstate commerce that WOSCA should be immune to the tax by virtue of the commerce clause. We do not agree. The opinion is based upon formalistic, doctrinaire reasoning of earlier days, emphasizing the direct-indirect distinction and an inherent suspicion or misunderstanding of gross receipts taxes. The more recent pronouncements of the United States Supreme Court have made *Puget Sound Stevedoring* something less than a strongly persuasive precedent.

Obviously the end result of the transactions described herein is that members of WOSCA purchase articles from out of state and have them delivered in the state. Regardless of the details, it must be admitted that some interstate commerce activity results, and that WOSCA is somewhat involved in the process. In a strict sense or limited frame of reference, any tax on WOSCA would have some effect on interstate commerce. Obviously too, the independent consolidators and distributors perform the jobs of assembling and dispersing at points in time which precede or follow the actual movement across state lines. In this sense, their activities may be characterized as local and subject to state taxation, although interstate commerce may be directly affected. *Convoy Co. v. Taylor* (1959), 53 Wn. (2d) 439, 334 P. (2d) 772; *Martin Ship. Ser. Co. v. Los Angeles* (1950), 34 Cal. (2d) 793, 215 P. (2d) 24; *cf. Canton R. R. v.*

*Rogan* (1951), 340 U. S. 511, 71 S. Ct. 447; *Minnesota v. Blasius* (1933), 290 U. S. 1, 78 L. Ed. 131, 54 S. Ct. 34.

■ Since the decision in *Western Live Stock v. Bureau of Internal Revenue* (1938), 303 U. S. 250, 82 L. Ed. 823, 58 S. Ct. 546, 115 A. L. R. 944, the primary considerations for determining the limits of a state's power to tax activities connected with interstate commerce have been these: (1) Whether the tax places an extra burden on interstate commerce not borne by intrastate commerce, or erects barriers, placing out-of-state businesses at a disadvantage when competing locally; *the discrimination test.* (2) Whether the interstate commerce involved is subject to the risk of repeated exactions of the same nature from other states; *the multiple burden test.* That the latter has become increasingly important is shown by *Northwestern States Portland Cement Co. v. Minnesota* (1959), 358 U. S. 450, 3 L. Ed. (2d) 421, 79 S. Ct. 357.

■ WOSCA contends that the tax discriminates against interstate commerce because the service which the organization provides is practicable only when great distances are involved and savings by volume rates are substantial. The state, however, by virtue of this statute, is merely requiring interstate commerce to pay its own way; a permissible objective. *Western Live Stock v. Bureau of Internal Revenue* (1938), 303 U. S. 250, 82 L. Ed. 823, 58 S. Ct. 546, 115 A. L. R. 944.

Pursuant to RCW 82.04.220,

"There is levied and shall be collected from every person a tax for the act or privilege of engaging in business activities. . . . "

The tax is applied to *everyone* engaging in business.

" 'Engaging in business' means commencing, conducting, or continuing in business and also the exercise of corporate or franchise powers . . . " RCW 82.04.150.

As the United States Supreme Court said in *McGoldrick v. Berwind-White Co.* (1940), 309 U. S. 33, 84 L. Ed. 565, 60 S. Ct. 388, 128 A. L. R. 876,

" . . . It was not the purpose of the commerce clause to relieve those engaged in interstate commerce of their just

share of state tax burdens, merely because an incidental or consequential effect of the tax is an increase in the cost of doing the business."

The Washington legislature has passed a general tax applicable to all who come within the terms of the statute. The tax does not amount to an extra burden not borne by those engaged solely in intrastate commerce; nor does it erect barriers to the disadvantage of out-of-state competitors. It cannot be said then that the tax is discriminatory. Cf. *Norton v. Department of Revenue* (1951), 340 U. S. 535, 95 L. Ed. 517, 71 S. Ct. 377.

We must next determine whether the *multiple burden* test is satisfied.

" . . . [N]ot every local tax laid upon gross receipts derived from participation in interstate commerce is forbidden. . . . " *Gwin, White & Prince, Inc. v. Henneford* (1937), 305 U. S. 434, 83 L. Ed. 272, 59 S. Ct. 325.

" . . . When there is no danger that several states will impose cumulative tax burdens on the same subject, a tax upon an activity that is a local incident of interstate commerce may be measured by gross receipts from that activity." Traynor, Judge, in *Martin Ship Ser. Co. v. Los Angeles* (1950), 34 Cal. (2d) 793, 215 P. (2d) 24.

In order to invalidate a state tax on interstate commerce on the ground that a multiple burden exists, the taxpayer must show that the burden exists. *Northwestern States Portland Cement Co. v. Minnesota* (1959), 358 U. S. 450, 3 L. Ed. (2d) 421, 79 S. Ct. 357. (Creating a risk of multiple burden is of course discrimination, so in that sense the "multiple burden test" is encompassed by the "discrimination test.") It is not affirmatively shown that WOSCA, as an entity, is subject elsewhere to taxation for the activity in which it engages or the services it renders. Indeed, on the basis of the facts before us, it is extremely doubtful if any other state could levy a similar tax on WOSCA. Washington is the state of incorporation. No offices are maintained in any other state, as in *Norton v. Department of Revenue* (1951), 340 U. S. 535, 95 L. Ed. 517, 71 S. Ct. 377. WOSCA has no contact in any other state save its contrac-

tual ties with the various independent consolidators in the various places. No property is owned anywhere. No representatives are present in other states, as was the situation in *Gwin, White & Prince, Inc. v. Henneford, supra.* Since virtually all activities of WOSCA are carried out by the firm of Fred H. Tolan & Associates in Washington, and since the activities in other states are *de minimus*, there is no possibility of a duplicate tax. The *multiple burden test* is therefore satisfied; hence, we hold that the tax in question is not invalid as an undue imposition on interstate commerce.

Further mention should be made of *Gwin, White & Prince, Inc. v. Henneford, supra,* since it is one of the major cases relied on by WOSCA. In *Gwin,* a tax levied by the state of Washington was held unconstitutional as applied to the taxpayer who was in the business of marketing fruit shipped from Washington to places of sale in other states and foreign countries. The United States Supreme Court held that the tax

" . . . though nominally local . . . in its practical operation discriminates against interstate commerce, since it imposes upon it, merely because interstate commerce is being done, the risk of a multiple burden to which local commerce is not exposed. . . ."

Emphasis was placed on the operation of branch offices in other states and the fact that the tax was not apportioned to the activities which actually took place in Washington. The instant case is distinguishable since, as previously indicated, WOSCA has not shown that a multiple burden actually exists, or that there is a risk of one. Furthermore, the activities of WOSCA, for all practical purposes, occur only in Washington.

WOSCA cited *Spector Motor Service, Inc. v. O'Connor* (1950), 340 U. S. 602, 95 L. Ed. 573, 71 S. Ct. 508, without extended discussion of its applicability. There, a franchise tax, measured by net income, on the privilege of doing business within the state was held unconstitutional as applied to an out-of-state corporation whose business as a carrier was entirely interstate. The tax involved herein is

not a tax on the privilege of doing interstate business; so *Spector Motor Service* is distinguishable. Interstate commerce can be conducted without the services of WOSCA. The members could arrange their transactions individually and enjoy the tax immunities of the commerce clause. But a local corporation, organized under the laws of Washington, performing local activities and serving local establishments, is subject to the tax.

Particular mention has not been made thus far of the item labeled "Railroad stop-off charge," claimed by the Tax Commission to be among the taxable services of WOSCA. We agree with WOSCA's contention that this item is inseparable from the actual transportation charges of carriers. It is therefore within that portion of the trial court judgment exempted from this appeal by the assignments of error.

The proceeds derived from all other items are taxable. For the reasons indicated herein, the trial court decision is reversed to the extent appealed from.

HILL, DONWORTH, OTT, and HUNTER, JJ., concur.

---

February 13, 1962. Petition for rehearing denied.

# APPENDIX

WOSCA Members Costs to be Added to Lowest Applicable Railroad Carload Rates per 100 Pounds

| At Seattle, Wash. | From Boston | From New York | From Philadelphia | From Chicago | From St. Louis | Cotton Pc. Goods, etc. | All other Freight |
|---|---|---|---|---|---|---|---|
| 1) Loading & consolidation..... | .30 | .37 | .37 | .35½ | .30 | .20 | .35 |
| 2) Railroad stop-off chg........ | .16½ | .09½ | .09½ | .09½ | .09½ | .11 | .11 |
| 3) All-risk Insurance ......... | .02 | .02* | .02 | .01 | .01 | .01 | .01 |
| 4) WOSCA Overhead ......... | .02½ | .02½ | .02½ | .02½ | .02½ | .02½ | .02½ |
| 5) Administration and Billing....... | .29 | .29 | .29 | .25 | .25 | .27 | .27 |
| 6) Unloading & segregation....... | .18½† | .18½† | .18½† | .18½† | .18½† | .18½† | .18½† |
| 7) Store door delivery........ | .24 | .24 | .24 | .24 | .24 | .24 | .24 |
| Total (per 100#)........ | $1.22½ | $1.22½ | $1.22½ | $1.16 | $1.10½ | $1.04 | $1.19 |
| At Tacoma (Total)........ | $1.20 † | $1.20 † | $1.20 † | $1.13½† | $1.08 † | $1.01 † | $1.16½† |
| At Spokane (Total)........ | $1.22 ‡ | $1.22 ‡ | $1.22 ‡ | $1.15½‡ | $1.10 ‡ | $1.03½† | $1.18½‡ |
| At Portland (Total)........ | $1.23 † | $1.23 † | $1.23 † | $1.16½† | $1.11 † | $1.04½† | $1.19½† |

*If no Store Door Delivery Ordered:* Deduct 24 cents at Seattle; 25 cents at Tacoma; 27 cents at Portland; and 24 cents at Spokane.

Reference Mark Explanation:

†—Plus 14 cents per shipment irrespective of weight which goes exclusively to Transfer Company.

*—Insurance company from New York only gets 6 cents surcharge per shipment regardless of weight.

‡—Plus 10 cents per shipment irrespective of weight which goes exclusively to Transfer Company.

*Note:* If *supplier* loads car at origin and *member* unloads car direct at destination, charge member *only*.

1. Proper lowest carload rate applicable........... Varies
2. Stop-off charge applicable from origin used........ Varies
3. All Risk insurance applicable from origin used........ Varies
4. WOSCA Overhead charge (2½ cents cwt.)........ $0.02½
5. Administration and billing cost from origin used........ Varies
6. A flat $5.00 *per car* which goes to *consolidator* in lieu of all otherwise applicable consolidation and loading costs........ $5.00