[No. 37585.    En Banc.    May 6, 1965.]

CONTINENTAL GRAIN COMPANY, *Respondent and Cross-appellant*, v. THE STATE OF WASHINGTON, *Appellant.*\*

\*Reported in 401 P.2d 870.

*The Attorney General, James A. Furber* and *Henry W. Wager, Assistants,* for appellant.

*W. Roger Johnson (Arthur A. Goldsmith* and *Gerson F. Goldsmith,* of counsel), for respondent and cross-appellant.

HUNTER, J.—This appeal concerns taxes assessed by the state, defendant (appellant), upon the gross income derived from Longview grain-storage operations of plaintiff (respondent), during the 4 years, 1957 through 1960.

Plaintiff received more than 3½ million tons of grain at its terminal export elevator and warehouse at tidewater during the period in question. Approximately half that amount was received from points outside the state via rail, truck or barge, and nearly all eventually was exported by ship to foreign destinations. All activities involved in unloading the carriers upon arrival and conveying the grain into the elevator, and in loading the export vessels by grain spout were performed and controlled by the plaintiff.

The bulk of the grain plaintiff received at its export terminal was its own and does not concern us upon this appeal, as income therefrom was not subject to the tax in dispute. Of the remainder, approximately 97 per cent was owned by Commodity Credit Corporation, a federal agency (hereafter referred to as "C.C.C."), and 3 per cent by other customers of plaintiff (hereafter referred to as "other customers"), all of whom were prior customers who had made advance arrangements for storage. None of the other customers' grain was exported.

It is the tax upon income plaintiff derived from its storage and handling charges for the grain belonging to C.C.C. and other customers, with the exception of income from charges for loading grain out for export, which gave rise to this suit.

This income was taxed at the rate of 1.8 per cent under the Public Utility Tax (RCW ch. 82.16). After petitioning, unsuccessfully, the State Tax Commission for relief, plain-

tiff sued for an abatement and refund, contending that it should have been taxed, instead, at the rate of 1 per cent under the catchall provision of the Business and Occupation Tax (RCW 82.04.290), and, further, that income it derived from *unloading* of grain from carriers arriving at the Longview terminal from out of state was beyond all tax.

The trial court agreed with plaintiff that the income in question was subject to tax under RCW 82.04.290, rather than RCW ch. 82.16; accordingly, it invalidated the tax assessed, and declared such income subject to tax, instead, under RCW 82.04.290, and thereupon directed refund of any excess paid in. However, the trial court refused to grant plaintiff's plea to immunize income derived from unloading of the out-of-state carriers.

The state appeals and the plaintiff cross-appeals.

The state contends that the Public Utility Tax was applicable, and therefore, that the trial court erred by invalidating it and declaring the Business and Occupation Tax applicable. The state urges that the plaintiff was engaged in a "public service business," as that term is defined in RCW 82.16.010, which provides:

> For the *purposes of this chapter,* unless otherwise required by the context.
>
> . . . .
>
> (11) *"Public service business"* means any of the businesses defined in subdivisions (1), (2), (3), (4), (5), (6), (7), (8), (9), and (10) *or any business subject to control by the state, or having the powers of eminent domain and the duties incident thereto,* or any business hereafter declared by the legislature to be of a public service nature. *It includes,* among others, without limiting the scope hereof: Airplane transportation, boom, dock, ferry, pipeline, *public warehouse,* toll bridge, toll logging road, water transportation and wharf businesses; . . . . (Italics ours.)

It is clear from the statute, that for plaintiff's facility to qualify thereunder as a public-service business, one of the *following requirements must be met:* (1) that it be subject to control by the state, or (2) that it have the powers of eminent domain and the duties incident thereto, or (3) that

it be declared by the legislature to be of a public-service nature, or (4) that it be a public warehouse.

The state contends that the plaintiff operated its facility as a public warehouse and thereby came within the definition of public-service business, as defined in RCW 82.16.010 (11), *supra*.

The record shows that the plaintiff annually applied for and received a public-grain-warehouse license for its Longview terminal from the State Department of Agriculture during the years in question, and met all the statutory requirements incidental thereto, which included the filing of evidence of proper insurance, a financial statement, and schedules of charges; furnishing of a warehouse bond, and issuance of warehouse receipts to its customers upon forms prescribed by the Department of Agriculture.

Plaintiff used and relied upon its public-grain-warehouse license as a means toward obtaining the grain-storage contract, which it solicited with C.C.C. It issued to C.C.C. negotiable warehouse receipts upon forms required under its license. Under C.C.C. regulations, C.C.C. could not have dealt with any facility but a licensed public-grain-warehouse. Further, plaintiff made its facility available to the other customers, inland dealers or producers, to whom the prescribed negotiable warehouse receipts were also issued by plaintiff.

■ The plaintiff, having (1) voluntarily obtained a public-warehouse license, (2) performed the statutory requirements incidental to the use of the license, (3) actively used the license and held itself out as a public warehouse for the obtaining of business, and (4) issued negotiable warehouse receipts on forms required under its public-grain-warehouse license, constituted itself as a public warehouse within the purview of RCW 82.16.010, and was subject to the public-service business tax under RCW ch. 82.16.

■ The plaintiff cites *Miles v. Enumclaw Co-op. Creamery Corp.*, 12 Wn.2d 377, 121 P.2d 945 (1942); *Trudeau v. Pacific States Box & Basket Co.*, 20 Wn.2d 561, 148 P.2d 453 (1944), and other related cases, for the proposition that the plaintiff must have held itself out to the public indif-

ferently to come within the definition of a public warehouse. These cases concern RCW Title 22 which relates to *regulation of public-service businesses.* The definitions under this title are not referred to in the *taxing* statute definition, RCW 82.16.010, *supra,* and, therefore, are not supplemental to the definitions of a public-service business, as defined in RCW 82.16.010. The cases cited are not apposite.

The plaintiff's facility, therefore, comes within the definition, "public service business," in RCW 82.16.010, and the trial court erred in invalidating the Public Utility Tax assessed and declaring the Business and Occupation Tax applicable.

Upon its cross-appeal, plaintiff contends that the tax assessment upon that portion of its gross income attributable to charges for unloading carriers which delivered grain from out of state to its terminal was invalid, because in violation of the commerce clause, U. S. Const. art. 1, § 8.

■ We are satisfied that the interstate journey terminated when the carriers delivered the grain to the Longview terminal under bills of lading designating the owner as consignee and the terminal as the destination or port of discharge, and where unloading of the carriers was performed by and under control of the plaintiff. *Convoy Co. v. Taylor,* 53 Wn.2d 439, 334 P.2d 772 (1959); *Washington-Oregon Shippers Co-op. Ass'n v. Schumacher,* 59 Wn.2d 159, 367 P.2d 112 (1961). Further, the grain had not, at the point of unloading, entered the stream of foreign commerce. Therefore, the tax assessed upon the income derived from plaintiff's unloading activities did not contravene the commerce clause.

Even assuming that the unloading constituted a part of interstate commerce, the state, nevertheless, constitutionally could tax the income plaintiff derived therefrom, since no discrimination was shown against interstate commerce in favor of competing intrastate commerce in this regard, nor was it shown that the tax assessment would subject interstate commerce to multiple burdens. *Convoy Co. v. Taylor, supra; Washington-Oregon Shippers Co-op. Ass'n v. Schumacher, supra.*

The trial court was correct in concluding that the income derived from the unloading charges was subject to tax.

The judgment of the trial court is reversed, insofar as it holds the Public Utility Tax inapplicable and where inconsistent with this opinion; otherwise it is affirmed.

ROSELLINI, C. J., HILL, DONWORTH, FINLEY, OTT, HAMILTON, and HALE. JJ., and BARNETT, J. Pro Tem., concur.

July 7, 1965. Petition for rehearing denied.