[No. 40927.    En Banc.    July 16, 1970.]

McKinnis Travel Service, Inc., *Respondent,* v. The State of Washington, *Appellant.*

Northwest Cosmopolitan Travel, Inc., *Respondent,* v. The State of Washington, *Appellant.**

*The Attorney General, Henry W. Wager* and *Timothy R. Malone, Assistants,* for appellant.

*Preston, Thorgrimson, Starin, Ellis & Holman,* by *Edward Starin* and *Susan F. French,* for respondents.

Hunter, C. J.—The plaintiffs (respondents), McKinnis Travel Service, Inc. (hereafter referred to as McKinnis), and Northwest Cosmopolitan Travel Service, Inc. (hereafter referred to as Northwest), began separate actions seeking a refund of taxes paid under protest to the defendant (appellant), State of Washington. The actions were consolidated for trial. The taxes were assessed pursuant to the business and occupation tax, RCW 82.04, and Rules 193-194 of the Tax Commission of the State of Washington.

*Reported in 472 P.2d 392.

The plaintiffs are Washington corporations whose representatives and offices are located solely in Washington.

McKinnis makes hotel reservations for potential travelers in other states and in foreign countries. When McKinnis receives a request for a hotel reservation, it either contacts the hotel directly or the hotel's local representative in Washington. Of the hotel reservations it makes, 75 per cent are obtained through local contact and 25 per cent through direct contact. For the service it renders, McKinnis receives a commission which is measured by a percentage of the rental fee. In 90 per cent of the cases, the clients prepay the hotel rentals; McKinnis deducts its fee and forwards the remainder. In the remaining 10 per cent, the clients leave a deposit which is forwarded to the hotel, which subsequently remits the commission to McKinnis.

Northwest makes reservations for potential travelers in out-of-state and foreign hotels in the same manner as McKinnis. The hotel reservations account for 15 per cent of Northwest's business. Northwest makes 75 per cent of the out-of-state hotel reservations through local contact and 25 per cent through direct contact. For hotel reservations in foreign countries, the percentages are reversed—25 per cent being made through local contact and 75 per cent through direct contact. In both instances, Northwest receives a commission which is sent by the hotel involved.

Northwest also makes tour reservations. The tour reservations account for 75 per cent of its business. Of the tours, three-fourths are in other states and one-fourth are in foreign countries. Fifty per cent of the tours arranged are made through direct contact and 50 per cent through local contact. The majority of these clients (95 per cent) prepay their charge. The commission is deducted, and the remainder is forwarded. In the remaining cases, the tour operators remit the commission.

Northwest also arranges for out-of-state and foreign car rentals and sales. This accounts for $7\frac{1}{2}$ per cent of its business. Of the car rentals, nine-tenths are in other states and made through local contact. The remaining one-tenth are for car rentals abroad and made through direct contact.

In the case of car rentals, the deposits are sent in and a commission is remitted. The remaining 2½ per cent of Northwest's commissions result from the sale of traveler's insurance and traveler's checks. The tax on Northwest's activities dealing with the sale of cars, traveler's insurance, and traveler's checks, was sustained by the trial court and is not now in controversy.

The state imposed a tax on the plaintiffs' activities measured by the commissions received under the "service" category of the business and occupation tax, RCW 82.04.290, which provides in part:

> *Upon every person engaging within this state,* in any business activity other than or in addition to those enumerated in . . . This section includes, among others, and without limiting the scope hereof . . . persons engaged in the business of rendering any type of service which does not constitute a "sale at retail" or a "sale at wholesale."

(Italics ours.)

The plaintiffs brought this action for refund, claiming that the taxes were in violation of the commerce clause of the United States Constitution, article 1, section 8, clause 3, and the due process clauses of the Washington State Constitution, article 1, section 3, and the United States Constitution, Amendment Fourteen.

The trial court granted the refund sought by the plaintiffs, holding that their activities constituted interstate commerce and were not a locally taxable incident. The state has appealed.

It is the plaintiffs' contention that the validity of the tax is dependent upon the characterization of the activities involved. If they are an integral part of interstate and foreign commerce, the plaintiffs assert that imposition of the tax violates the commerce clause of the federal constitution. We disagree.

The United States Supreme Court, in the landmark decision of *Western Live Stock v. Bureau of Revenue,* 303 U.S. 250, 82 L. Ed. 823, 58 S. Ct. 546 (1938), stated at page 254:

It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business. "Even interstate business must pay its way," [authorities omitted] and the bare fact that one is carrying on interstate commerce does not relieve him from many forms of state taxation which add to the cost of his business.

■ Thus, the mere fact that an activity being taxed is an integral part of interstate commerce does not render the tax *per se* invalid.

■ The following tests represent the guidelines presently employed in judging the state's power to levy a gross receipts tax on activities connected with interstate commerce:

(1) Whether the tax places an extra burden on interstate commerce not borne by intrastate commerce, or erects barriers, placing out-of-state businesses at a disadvantage when competing locally; *the discrimination test.* (2) Whether the interstate commerce involved is subject to the risk of repeated exactions of the same nature from other states; *the multiple burden test.*

*Washington-Oregon Shippers Cooperative Ass'n v. Schumacher,* 59 Wn.2d 159, 167, 367 P.2d 112 (1961); *General Motors Corp. v. State,* 60 Wn.2d 862, 376 P.2d 843 (1962); *aff'd* 377 U.S. 436, 12 L. Ed. 2d 430, 84 S. Ct. 1564, *rehearing denied,* 379 U.S. 875, 13 L. Ed. 2d 79, 85 S. Ct. 14 (1964); *Continental Grain Co. v. State,* 66 Wn.2d 194, 401 P.2d 870 (1965); *Washington Tel. Co. v. State,* 77 Wn.2d 923, 468 P.2d 687 (1970).

In the present case, even assuming that the plaintiffs' activities constitute interstate commerce, it is our view that the tax imposed on those activities is valid and not unconstitutional, for it neither discriminates nor does it create a multiple burden.

Here, the tax on travel bureaus is measured by a percentage of the commissions paid. This percentage is the same whether the plaintiffs make arrangements for services entirely with businesses within or without the state. The tax is not discriminatory because the state is merely

requiring the commerce to pay its own way, which is a permissible objective. *Western Live Stock v. Bureau of Revenue, supra.* The tax applies to all businesses so classified in the state of Washington whether they engage in interstate commerce, intrastate commerce, or both. It is a general tax and is applied to all who come within the statute's terms. Therefore, the tax cannot be considered to amount to an extra burden not borne by those engaged solely in interstate commerce; nor does it establish barricades to the disadvantage of out-of-state competition. *Washington-Oregon Shippers Cooperative Ass'n v. Schumacher, supra.* The tax in no way discriminates against out-of-state travel bureaus.

Concerning the multiple burden test, the general rule is that before a tax can be reversed on the basis of an existing multiple burden, it must *affirmatively be shown* by the taxpayer that such burden exists. *Washington-Oregon Shippers Cooperative Ass'n v. Schumacher, supra.*

In the present case, it has not been affirmatively shown that the plaintiffs are taxable elsewhere for the services they provide. Washington is the plaintiffs' state of incorporation. The plaintiffs have no other offices or representatives save those in Washington. Thus, due process would prohibit a similar tax by other states on the commissions which the plaintiffs earned in this state. *Northwestern States Portland Cement Co. v. Minnesota,* 358 U.S. 450, 3 L. Ed. 2d 421, 79 S. Ct. 357 (1959); *General Motors Corp. v. State, supra; Washington Tel. Co. v. State, supra.*

The plaintiffs contended, however, in oral argument that a gross receipts tax, paid by the hotels and car rental agencies to their respective states or governments, in some cases could include the commissions which have been remitted to the plaintiffs, thereby creating a multiple burden on their services. Such a contention is purely speculative. The plaintiffs having failed to sustain the burden of proof that such a tax exists, it will not be considered by this court. *Washington-Oregon Shippers Cooperative Ass'n v. Schumacher, supra.*

We conclude that the business and occupation tax, as

234

levied upon the plaintiffs, does not place an unconstitutional burden upon interstate commerce. That part of the judgment of the trial court appealed from is reversed.

FINLEY, ROSELLINI, HAMILTON, HALE, NEILL, McGOVERN, and STAFFORD, JJ., and DONWORTH, J. Pro Tem., concur.