[No. 6670-0-II.   Division Two.   May 22, 1985.]

SHURGARD MINI-STORAGE OF TUMWATER, *Respondent,* v. THE DEPARTMENT OF REVENUE, *Appellant.*

PANTEC MINI-STORAGE—OAK HARBOR, ET AL, *Respondents,* v. THE STATE OF WASHINGTON, *Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *Maureen Hart, Assistant,* for appellant.

*David Lieberworth,* for respondent Shurgard Mini–Storage.

*Terence P. Lukens,* for respondents Pantec Mini–Storage, et al.

PETRICH, J.—In a consolidated trial, the Superior Court entered a judgment in favor of a number of operators of mini–storage warehouse facilities for a refund of public utility taxes and interest paid under protest for the audit period beginning January 1, 1976, and ending December 31, 1980. The trial court concluded that the relationship of the various operators and their customers was that of landlord

and tenant rather than bailor and bailee, and consequently the tax imposed on the amount of rentals received was a tax on property in violation of the uniformity requirement of article 7, section 1 of the Washington State Constitution as interpreted in *Apartment Operators Ass'n of Seattle, Inc. v. Schumacher,* 56 Wn.2d 46, 351 P.2d 124 (1960).

The State of Washington by its Department of Revenue appeals, contending that the business of operating the mini–warehouse storage units, used primarily for the storage of tangible personal property, is a "public service business" as defined in former RCW 82.16.010,[1] is subject to the public utility tax, and that the tax does not violate the uniformity requirements of the state constitution. Furthermore, the State argues, the manner of conducting the business in a landlord–tenant relationship, rather than as a bailment is immaterial to the validity of the tax.

We affirm. Our decision however is not based on the constitutional grounds relied on by the trial court.[2] Resolution of issues on constitutional grounds should be avoided if possible. *State v. Hall,* 95 Wn.2d 536, 539, 627 P.2d 101 (1981); *Ohnstad v. Tacoma,* 64 Wn.2d 904, 907, 395 P.2d 97 (1964). *Accord, Bresolin v. Morris,* 86 Wn.2d 241, 250–51, 543 P.2d 325 (1975). This court may affirm on any ground within the proof before the trial court. *Bock v. State Bd. of Pilotage Comm'rs,* 91 Wn.2d 94, 95, 586 P.2d 1173 (1978); *Gross v. Lynnwood,* 90 Wn.2d 395, 583 P.2d 1197, 96 A.L.R.3d 187 (1978); *Exner v. Chehalis Fluoridation League,* 51 Wn.2d 445, 446, 319 P.2d 543 (1957); *I–5 Truck Sales & Serv. Co. v. Underwood,* 32 Wn. App. 4, 5, 645 P.2d 716 (1982). Rather we are satisfied that the operation of the

---

[1]RCW 82.16.010 has since been amended by Laws of 1981, ch. 144, § 2; Laws of 1982, 2d Ex. Sess., ch. 9, § 1; and Laws of 1983, 2d Ex. Sess., ch. 3, § 32.

[2]The continued validity of *Schumacher* is seriously questioned by the Supreme Court's later decision in *Black v. State,* 67 Wn.2d 97, 406 P.2d 761 (1965), which held that a sales tax measured by the amount received in a charter of a ship was an excise tax and not an ad valorem tax, and did not violate the uniformity requirements of the state constitution.

mini–storage facilities does not meet the definition of a "public service business" as defined by the statute.[3]

The case was submitted to the trial court on stipulated facts. The salient facts are summarized as follows. Each of the operators during the audit period was engaged in the mini–storage business in the state of Washington. The facilities of each operation consisted of one or more large 1– or 2–story buildings divided into separate rooms or spaces of varying sizes. The facilities of each operation vary in capacity from 20 to 700 rooms. The rooms are rented to individuals or business entities on a month–to–month or long–term basis, and the amount of rental is based solely on the area of the room and not on the nature of the contents. Each user signs a form lease, the provisions of which closely parallel those contained in a regular office or commercial lease. Although each user may use the space as he or she sees fit (subject to some limitations in the agreement such as the storage of explosive or inflammable material or illegal commodity or operation), virtually all spaces are used to store tangible personal property. Although a general description of the user's goods is required, a detailed inventory is not. The operators are not required to be licensed by or file rates or tariffs with the Washington Utilities and Transportation Commission, and the operators have maintained consistently that they have the right to refuse to rent to any member of the public for any reason. Access to each room is through a garage door or ordinary

---

[3]The State as an alternative argument asks this court to rule that if the operators' activities do not amount to a public service business they are nevertheless subject to the business and occupation tax imposed by RCW 82.04. This court declines the invitation to issue an advisory opinion. *Cooper v. Department of Insts.*, 63 Wn.2d 722, 724, 388 P.2d 925 (1964). There is an additional problem in considering the State's alternative argument. It may well be that the issue was presented to the trial court as suggested by the State in its brief before this court. However, a review of the record on review, which includes the stipulation of facts, the court's findings and conclusions, and the oral decision, fails to reflect the alternative claim. We were not favored with copies of the trial briefs. Issues not raised before the trial court will not be considered on appeal. *Martin v. Municipality of Metro Seattle*, 90 Wn.2d 39, 42, 578 P.2d 525 (1978).

door secured by a lock operated by the user, or a computerized system that bars access to all but the user.

A resident manager is on the premises at all times. Each site is surrounded by a high fence, with access through a gate in the vicinity of the manager's office. Access to the facility is strictly controlled for the purpose of general security and as an enhancement of the marketing image of the operation. Unless the facility is equipped with a computerized alarm system that limits access to the user employing the correct individual code number, each user is required to sign a logbook which identifies the user, the particular space visited, and the date and time of access. During normal business hours, users may visit their allotted space as frequently as they desire. Access after hours or in unusual circumstances may be arranged with the resident manager. Storage is on a self–service basis and the operation's personnel do not transport, weigh, or inventory the property stored.

The public utility tax imposed by RCW 82.16.020, during the audit period provided in pertinent part:

> There is levied and there shall be collected from every person a tax for the act or privilege of engaging within this state in any one or more of the businesses herein mentioned. The tax shall be equal to the gross income of the business, multiplied by the rate set out after the business, as follows:
>
> . . .
>
> (5) Motor transportation and tugboat businesses, and all public service businesses other than ones mentioned above: One and eight–tenths of one percent.[4]

The public service businesses, taxed under the above quoted section, were defined in former RCW 82.16.010(11) as follows:

> (11) "Public service business" means any of the businesses defined in subdivisions (1), (2), (3), (4), (5), (6), (7), (8), (9), and (10) or any business subject to control by

---

[4]RCW 82.16.020 has since been amended by Laws of 1982, 1st Ex. Sess., ch. 35, § 5; Laws of 1982, 2d Ex. Sess., ch. 5, § 1; and Laws of 1983, 2d Ex. Sess., ch. 3, § 13.

the state, or having the powers of eminent domain and the duties incident thereto, or any business hereafter declared by the legislature to be of a public service nature. It includes, among others, without limiting the scope hereof: Airplane transportation, boom, dock, ferry, log patrol, pipe line, warehouse, toll bridge, toll logging road, water transportation and wharf businesses;[5]

The State's arguments may be summarized as follows. The court in *Continental Grain Co. v. State,* 66 Wn.2d 194, 401 P.2d 870 (1965), *cert. denied,* 382 U.S. 978 (1966), held that the catchall definition of a "public service business" in former RCW 82.16.010(11)[6] includes a business activity satisfying either one of the following: (1) a business subject to control by the State, *or* (2) a business having the powers of eminent domain, *or* (3) a business declared by the Legislature to be of a public service nature, *or* (4) any one of a number of enumerated businesses specified, which for our purposes includes a warehouse business. Since a warehouse is not otherwise specifically defined, we must look to the common meaning of the term. A commonly accepted meaning is that a warehouse is "a structure or room for the storage of merchandise or commodities", *Webster's Third New International Dictionary* (1969). The spaces rented by each of the taxpayers are used for the storage of merchandise or commodities. Finally, a tax for the privilege of engaging in a particular business measured by the gross income or charges for the use of the premises is an excise tax and not a tax on property subject to the uniformity requirement of article 7, section 1 of the Washington State Constitution, citing *PUD 3 v. State,* 71 Wn.2d 211, 427 P.2d 713 (1967); *Black v. State,* 67 Wn.2d 97, 406 P.2d 761 (1965); *State ex rel. Stiner v. Yelle,* 174 Wash. 402, 25 P.2d 91 (1933).

We disagree with the State's analysis.

■ Our task is to determine precisely those kinds of

---

[5]See footnote 1.

[6]When the *Continental Grain* case was decided the word "warehouse" in former RCW 82.16.010(11) was preceded by the word "public." In all other respects the section was the same.

businesses the Legislature intended to be included as public service businesses and thus subject to the tax. We begin our discussion with the proposition that if there is any doubt as to the meaning of a taxing statute it must be construed most strongly against the taxing authority and in favor of the taxpayer. *Mac Amusement Co. v. Department of Rev.*, 95 Wn.2d 963, 966, 633 P.2d 68 (1981); *Vita Food Prods., Inc. v. State*, 91 Wn.2d 132, 134, 587 P.2d 535 (1978).

The State's reliance on *Continental Grain Co. v. State* is misplaced. The expansive interpretation of the predecessor to RCW 82.16.010(11)—that a public service corporation included either a business subject to control by the State, one having the powers of eminent domain, one declared to be of a public service nature, or one operating a public warehouse—is simply dicta. The taxpayer in that case was licensed by the State Department of Agriculture to operate a public grain warehouse, it filed its schedule of charges, furnished a warehouse bond, and issued warehouse receipts to its customers on forms prescribed by the State Department of Agriculture. Obviously, the taxpayer's business was strictly controlled by the State, qualifying it as a public service business. It was thus unnecessary there to refer to the common meaning of the term "warehouse" to determine whether the activity was properly classified as a "public service business."

The proper analysis of the section defining a public service business is to consider the rule of noscitur a sociis, which teaches that the meaning of doubtful words may be determined by reference to their relationship with other associated words and phrases. *Mercer Island v. Kaltenbach*, 60 Wn.2d 105, 109, 371 P.2d 1009 (1962); *Kucher v. Pierce Cy.*, 24 Wn. App. 281, 286, 600 P.2d 683 (1979); 2A N. Singer, *Statutory Construction* § 47.16 (4th ed. 1984).

The last sentence of former RCW 82.16.010(11) is merely descriptive of the types of business or activities defined in the first sentence as businesses either subjected to state control, having the powers of eminent domain, or declared to be of a public service nature. Each of the busi-

nesses enumerated in the last sentence was regulated by the State. Specifically, the operation of a storage warehouse, which was described as a building where goods are received for storage for compensation (but excluding certain agricultural goods), required licensing by the State and the filing of rates and, furthermore, was declared to be a "public service company." Former RCW 81.92, repealed by Laws of 1981, ch. 13,. § 6. The warehousing of certain agricultural commodities was also controlled by RCW 22.09 during the audit period. These kinds of activities are clearly public service businesses encompassed by the statute.[7]

In the instant case the facilities rented out by the operator are free from any similar type of licensing or regulation by the State. We are satisfied that the Legislature did not intend to extend the public service tax to every business whose income or part thereof was derived from providing facilities capable of storing tangible personal property. If such were the case, the operator of an office building that provides space for the storage of excess equipment or furniture for its office tenants would be subject to such a tax. Further, a landlord leasing a building or structure to a manufacturer for the storage of inventory would also be subject to such a tax. The Legislature by proper enactment may well have the power to tax such activities, but we are convinced that the Legislature in the act under review did not extend the public service tax to such activities.

---

[7]Although not relied on by the State in its brief, reference in oral argument was made to the case of *Port of Seattle v. Luketa,* 12 Wn.2d 439, 121 P.2d 951 (1942), which held on similar facts that the owner of the leased premises was operating a public service business, thus requiring impartiality to all who apply for service. However in *Luketa,* the owner conceded it was operating a regulated warehouse by filing rates as required by statute thus distinguishing it from the case before us. Furthermore, unlike the present case, *Luketa* did not involve a taxing statute.

Affirmed.

WORSWICK, C.J., and REED, J., concur.