[No. 31898.  *En Banc*.  April 24, 1952.]

JAMES H. MAHLER, *Appellant*, v. A. A. TREMPER, *as Treasurer of King County et al., Respondents.*[1]

*Peyser, Cartano, Botzer & Chapman,* for appellant.

*Charles O. Carroll* and *Samuel C. Rutherford,* for respondents.

*The Attorney General* and *Lyle L. Iversen, Assistant,* for the validity of the legislative act.

[1] Reported in 243 P. (2d) 627.

FINLEY, J.—James H. Mahler, engaged in the real-estate business in Seattle, Washington, instituted this lawsuit in King county superior court. He questions, on several grounds, the constitutionality of the 1951 tax on real-estate sales, or transactions (Laws of 1951, (1st) Ex. Ses. chapter 11, p. 108, hereinafter referred to as chapter 11). The action was brought under the declaratory judgment act. Mr. Mahler asked for injunctive relief against the auditor and treasurer of King county to prevent them from enforcing the law and collecting the tax. A demurrer, on the ground that the complaint did not state facts sufficient to constitute a cause of action, was sustained by the trial court. Mr. Mahler has appealed.

Chapter 11 authorizes each county of the state, at its option, to impose a tax on sales of real estate. The imposition of the tax is restricted to sales involving real estate located in the particular county. King county has elected to exercise the statutory option by enacting an ordinance to effectuate or impose the tax on such sales of real estate. Appellant, among other things, contends that the tax is not an excise, but one imposed upon property, and that it violates constitutional provisions or limitations respecting the imposition of taxes on property; furthermore, that chapter 11 violates other state and Federal constitutional provisions. We do not agree. It is our opinion that the trial court properly sustained the demurrer and dismissed the action.

We have reviewed *State ex rel. Stiner v. Yelle,* 174 Wash. 402, 25 P. (2d) 91 (business and occupation tax); *Morrow v. Henneford,* 182 Wash. 625, 47 P. (2d) 1016 (sales tax); *Vancouver Oil Co. v. Henneford,* 183 Wash. 317, 49 P. (2d) 14 (compensating tax); *Klickitat County v. Jenner,* 15 Wn. (2d) 373, 130 P. (2d) 880 (sales tax); *Gruen v. State Tax Commission,* 35 Wn. (2d) 1, 211 P. (2d) 651 (soldiers bonus —cigarette tax); and numerous other cases.

The tax incidence in the case at bar relates to the sale of real estate. The tax sustained in the *Morrow* case, *supra,* related to, or was imposed upon, the sale of personal property. Appellant has advanced many ingenious argu-

ments, but we can visualize no distinction between the *Morrow* case and the one at bar, except the fact that the former was concerned with a transaction tax involving personal property, while the latter is concerned with a transaction tax involving real estate. We recognize the distinction between real and personal property and realize quite well that many arguments involving the difference can be made in an effort to distinguish the tax in the *Morrow* case from the one in the case at bar. Without more, we are convinced that chapter 11 imposes an excise, and that constitutional provisions relative to taxes on property are no more applicable here than they were in *Morrow v. Henneford, supra.* Our thinking on this aspect of the matter is well explained by the comment of the court in the *Vancouver Oil Company* case, *supra,* at page 320, as follows:

"With reference to the first contention, that is, that the tax is a property tax, little need be said, because this contention is covered by what is said in the recent case of *Morrow v. Henneford,* 182 Wash. 625, 47 P. (2d) 1016, where it was held that the tax provided for in chapter 180 was an excise tax, and not a property tax."

At this point it is appropriate to refer to several basic principles of law which are generally applicable to the instant case. In *State ex rel. King County v. State Tax Commission,* 174 Wash. 336, 341, 24 P. (2d) 1094, we said:

"The power of taxation is an incident of sovereignty, and is possessed by the state without being expressly conferred by the people. It is a legislative power, and when the people, by the constitution, create a department of government upon which they confer the power to make laws, the power of taxation follows as a necessary part of the general power. *State ex rel. Thompson v. Nichols,* 29 Wash. 159, 69 Pac. 771; *State ex rel. Board of Commissioners v. Clausen,* 95 Wash. 214, 163 Pac. 744. The legislature had a right to enact chapter 106, even though not expressly authorized by the constitution.

"Since the legislature had the power of taxation, it follows that it might confer such power upon such agencies as it deemed fit and proper for the valuation and equalization of inter-county properties."

In *Morrow v. Henneford, supra,* at page 630, we referred to a decision of the United States supreme court as follows:

"In *Bromley v. McCaughn,* 280 U. S. 124, 50 S. Ct. 46, the court held that a tax imposed upon transfers of property by gift is not a direct tax, but an excise on the exercise of one of the powers incident to ownership, and need not be apportioned. The court said:

" 'Whatever may be the precise line which sets off direct taxes from others, we need not now determine. While taxes levied upon or collected from persons because of their general ownership of property may be taken to be direct, *Pollock v. Farmers Loan & Trust Company,* 157 U. S. 429, 158 U. S. 601, this Court has consistently held, almost from the foundation of the government, that a tax imposed upon a particular use of property or the exercise of a single power over property incidental to ownership, is an excise which need not be apportioned, and it is enough for present purposes that this tax is of the latter class. [Citing cases]

" 'It is a tax laid only upon the exercise of a single one of those powers incident to ownership, the power to give the property owned to another. Under this statute all the other rights and powers which collectively constitute property or ownership may be fully enjoyed free of the tax. So far as the constitutional power to tax is concerned, it would be difficult to state any intelligible distinction, founded either in reason or upon practical considerations of weight, between a tax upon the exercise of the power to give property *inter vivos* and the disposition of it by legacy, upheld in *Knowlton v. Moore, supra,* the succession tax in *Scholey v. Rew, supra,* the tax upon the manufacture and sale of colored oleomargarine in *McCray v. United States, supra,* the tax upon sales of grain upon an exchange in *Nicol v. Ames, supra,* the tax upon sales of shares of stock in *Thomas v. United States, supra,* the tax upon the use of foreign built yachts in *Billings v. United States, supra,* the tax upon the use of carriages in *Hylton v. United States, supra;* . . .

" 'It is true that in each of these cases the tax was imposed upon the exercise of one of the numerous rights of property, but each is clearly distinguishable from a tax which falls upon the owner merely because he is owner, regardless of the use or disposition made of his property. See *Billings v. United States, supra;* cf. *Pierce v. United States,* 232 U. S. 290 . . .

" 'The power to give cannot be said to be a more important incident of property than the power to use, the exercise of which was taxed in *Billings v. United States,* and even though differences in degree may be carried to a point where they produce distinctions in kind, the present levy falls so far short of taxing generally the uses of property that it cannot be likened to the taxes on property itself which have been recognized as direct. It falls, rather, into that category of imposts or excises which, since they apply only to a limited exercise of property rights, have been deemed to be indirect and so valid although not apportioned.' "

In the *Morrow* case, after our reference to the *Bromley* case, we stated:

"We are of the opinion that the sales tax here involved is an excise, not required to be apportioned, and therefore not obnoxious to the cited provisions of the state and Federal constitutions."

In *Newman v. Schlarb,* 184 Wash. 147, 154, 50 P. (2d) 36, we said:

"The establishment and maintenance of public schools throughout the state is primarily and essentially a *state* purpose, from which local and special benefits are expected to, and do, flow to the counties and the various municipalities of the state. In the performance of such general duties and purposes, the state calls upon and utilizes its constituent political agencies and for such purposes confers such powers and imposes such duties upon them as it deems necessary. These local subdivisions are created by the sovereign power of the state and under its paramount authority, with the view, not only of having them administer their own local and internal affairs, but also of having them carry out the policies of the state at large and assist in the accomplishment of the general purposes of the state.

"Consequently, the state, through the legislature, may not only require such subdivisions to levy taxes for public purposes, but may also fix the amount to be levied by them, provided that such purposes, though of a general nature and for the benefit of the whole people, result in special benefits to the particular subdivision. [Citing cases]."

We are committed to the proposition that a tax upon the sale of property is not a tax upon the subject matter of that sale. A sales tax upon personal property or a sales tax

upon real property is a tax upon the act or incidence of transfer. The imposition relates to an exercise of one of several rights in and to property. Imposition is not upon each and every owner merely because he is the owner of the property involved.

Appellant contends that the title of chapter 11 is constitutionally defective in that more than one subject is embraced in the text of the bill in violation of the Washington constitution, Art. II, § 19. Section 2, of chapter 11, among other things provides:

" . . . That one-half of one per cent of the proceeds of the tax provided for herein may be placed in the current expense fund of the county."

Specifically, appellant contends that this provision provides general and unrestricted revenue for the counties concerned by allowing one half of one per cent of the proceeds accruing from the tax to be placed in the current county expense fund.

■ Apparently the argument is that this constitutes a *general* revenue-raising provision which is inconsistent with or beyond the matters enumerated in the title of chapter 11. This seems to us an extreme view of the matter. It appears more likely that the particular provision was adopted by the legislature to take care of the expense of collection cast upon the counties by the new tax. One half of one per cent of the total proceeds of the tax does not seem to us an unreasonable amount to take care of tax collection expenses. Such a provision seems pertinent and germane to the basic purposes of the act enunciated in the title of chapter 11. In *Gruen v. State Tax Commission, supra,* at page 22, we said:

"Titles to statutes may be general or restrictive; or, in other words, broad or narrow, since the legislature in each case has the right to determine for itself how comprehensive shall be the object of the statute. And it also has a wide discretion in the particularity of the title selected to express it, provided that, by a fair construction, such title complies with the constitutional provision in question.

"A general title may be said to be one which is broad and comprehensive, and covers all legislation germane to the general subject stated. It is not an objection that it covers

more than the subject of the body of the act, but it must not, in any event, cover less. It is not necessary that it index the details of the act, or give a synopsis of the means by which the object of the statute is to be accomplished. All matters which are germane to the subject may be embraced in one act. Under the true rule of construction, the scope of the general title should be held to embrace any provision of the act, directly or indirectly related to the subject expressed in the title and having a natural connection thereto, and not foreign thereto. Or, the rule may be stated as follows: Where the title of a legislative act expresses a general subject or purpose which is single, all matters which are naturally and reasonably connected with it, and all measures which will, or may, facilitate the accomplishment of the purpose so stated, are properly included in the act and are germane to its title."

■ Resolution No. 12666 of the board of county commissioners of King county provides in part as follows:

· "Section V. No instrument of sale or conveyance, a tax on which is imposed by this resolution, shall be accepted by the county auditor for filing or recording until the tax shall have been paid and the stamp or stamps evidencing such payments have been affixed to the instrument."

Appellant contends that the above-quoted provision of resolution No. 12666 is inconsistent with or purports to alter or amend the recording act of the state of Washington, and that the county cannot invalidate a state statute in this manner. In this connection, Laws of 1951, (2d) Ex. Ses., chapter 19, § 4, p. 76, enacted subsequent to the promulgation of resolution No. 12666, reads as follows:

"Sec. 4. Section 28.45.090, R.C.W., as derived from section 11, chapter 11, Laws of 1951, First Extraordinary Session, is amended to read as follows:

"The tax hereby imposed shall be paid to and collected by the county treasurer who shall cause a stamp evidencing satisfaction of the lien to be affixed to the instrument of sale or conveyance prior to its recording. A receipt issued by the county treasurer for the payment of the tax imposed under this chapter shall be evidence of the satisfaction of the lien imposed hereunder and may be recorded in the manner prescribed for recording satisfactions of mortgages. No instrument of sale or conveyance evidencing a sale sub-

ject to the tax shall be accepted by the county auditor for filing or recording until the tax shall have been paid and the stamp affixed thereto; in case the tax is not due on the transfer, the instrument shall not be so accepted until suitable notation of such fact has been made on the instrument by the treasurer."

Appellant further contends that section 4, of chapter 19, quoted above, violates section 37 of Article II of the Washington constitution, which reads as follows:

"Section 37. Revision or Amendment.—No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length."

If statutory authority was lacking when section V of resolution No. 12666 of the board of county commissioners of King county was promulgated, it was subsequently supplied through legislative enactment of Laws of 1951, (2d) Ex. Ses., chapter 19, § 4, quoted above. We do not think that chapter 19, § 4, *supra*, violates Art. II, § 37, of the Washington constitution. The practice of modifying existing statutes by enacting subsequent original statutes without the necessity of specifically amending the former has been followed very generally in this state for many years. The situation involved, the method of legislating, or the draftsmanship employed in the enactment of § 4, chapter 19, *supra,* is simply not the kind of thing prohibited by the Washington constitution, Art. II, § 37. In *Spokane Grain & Fuel Co. v. Lyttaker,* 59 Wash. 76, 80, 109 Pac. 316, we commented upon the requirements of the Washington constitution, Art. II, § 37, and adopted or followed the language of *Ex Parte Pollard,* 40 Ala. 77, which reads as follows:

" 'It was never intended by the constitution that every law which would affect some previous statute of variant provisions on the same subject should set out the statute or statutes so affected at full length. If this were so, it would be impossible to legislate. The constitutional provision reaches those cases where the act is strictly amendatory or revisory in its character. Its prohibition is directed against the practice of amending or revising laws by additions or other alterations, which without the presence of the original

are usually unintelligible. If a law is in itself complete and intelligible, and original in form, it does not fall within the meaning and spirit of the constitution.' "

We have discussed a number of contentions of appellant which we regard as the most significant relative to the alleged unconstitutionality and invalidity of chapter 11. Appellant's other contentions have been considered. We are not convinced of the soundness of appellant's attack upon chapter 11, and the judgment of the trial court will stand affirmed.

SCHWELLENBACH, C. J., MALLERY, HILL, GRADY, HAMLEY, WEAVER, and OLSON, JJ., concur.

DONWORTH, J. (concurring in the result)—I concur in all of the foregoing opinion except the last paragraph. I think its implications are too broad and that in the future this case will be cited as having disposed of several important questions which appellant has attempted to raise but is not entitled to raise in this case.

For example, appellant complains that a seller of real estate is taxed by chapter 11 at the same rate on the sale of property worth $20,000 whether he owns it in fee or has only a $500 equity in it.

He also complains that a lease with an option to purchase is defined as a sale under chapter 11, as amended, and is taxed as such.

These and possibly other matters of which he complains purport to be disposed of adversely to the taxpayer in this decision.

In my opinion, these matters are not before us for decision because there is no allegation in appellant's complaint that he is affected by the portions of chapter 11 applicable thereto. He merely alleges

"That plaintiff is a property owner in King County, as well as other counties in the State of Washington, and he has sold, is presently selling and will be selling various parcels of real estate in King County, as well as in various other counties in the State of Washington. That he will be directly damaged in his property by the enforcement of

Chapter 11, Laws Ex. Sess. 1951, and the Resolution adopted by the Commissioners of King County pursuant thereto."

There is no allegation that he intends to enter into a lease with an option to buy or that he proposes to sell an equity in real property.

Under the declaratory judgment act this court may not render advisory opinions.

In *Washington Beauty College v. Huse,* 195 Wash. 160, 80 P. (2d) 403, we said:

"It should be remembered that this court is not authorized to render advisory opinions or pronouncements upon abstract or speculative questions under the declaratory judgment act. The action still must be adversary in character between real parties and upon real issues, that is, between a plaintiff and defendant having opposing interests, and the interests must be direct and substantial and involve an actual as distinguished from a possible or potential dispute, to meet the requirements of justiciability.

"The term 'substantial interest' is not susceptible of a precise definition. It is a matter for judicial determination in each particular case."

In concluding his brief, appellant requests this court to advise him concerning the following questions:

"I. Is an earnest money real estate agreement a 'contract' within the meaning of Chapter 11?

"2. May a seller and buyer contract for the payment of the tax pro rata or entirely by the buyer, and is such a contract enforceable?

"3. Does the sale price against which the tax percentage is applied include only the equity of a contract buyer when he sells his interest under the contract, or does it include the entire purchase price, composed of his equity plus the balance due on the contract?

"4. Is this tax payable to the County Treasurer at the time a real estate contract is executed or when the deed conveying title is filed?

"5. Is this tax payable on a 'sale to satisfy a debt'?"

For the reasons stated in the case above cited, the court has properly declined to answer these questions and I think that it should be specifically stated that the court is not, by what is said in the last paragraph of the opinion, passing

upon any questions other than those properly before the court.

With this exception, I concur in the opinion.