[No. 37413.   En Banc.   October 14, 1965.]

E. A. Black, *Respondent*, v. The State of Washington, *Appellant*.*

*Reported in 406 P.2d 761.

The Attorney General, Edward B. Mackie and Henry W. Wager, Assistants, for appellant.

Lycette, Diamond & Sylvester and Lyle L. Iversen, for respondent.

FINLEY, J.—This tax dispute presents a question left over from the Seattle World's Fair. Mitsui & Co., Ltd., leased or chartered the "Dominion Monarch" to a Washington corporation, the Dominion Monarch, Inc., for use as a floating hotel in Seattle during the World's Fair in the summer of 1962. The cost of the lease was $425,000. The state tax commission assessed Mitsui & Co., Ltd., with a retail sales tax of $17,000 on the lease of the ship. The assessment was appealed to the Washington State Tax Commission, and that body upheld the assessment. Mitsui assigned all claims for a refund of the tax to the Dominion Monarch, Inc. When Dominion Monarch, Inc., went through voluntary dissolution, the stockholders assigned the claim for refund to E. A. Black, and he appealed the decision of the tax commission to the Thurston County Superior Court. The superior court held the tax invalid, and the state appealed.

The trial court held the assessment invalid for several reasons. First, the trial court characterized the tax as a tax on property. Emphasizing and reasoning that there was no tax on unrented ships, he reached a conclusion that the tax violated the Washington state constitutional provisions which require taxes on property to be uniform. (Const. art. 7, § 1.) Secondly, the trial court also held that, since

there was not a similar tax on shore-based hotels, there was a denial of equal protection. We find the trial court in error on both grounds.

■ First of all, this is an excise tax on the transaction of leasing tangible personal property. It is not a tax on property. A recitation of standard tax principles upholds this statement:

> [T]he obligation to pay an excise is based upon the voluntary action of the person taxed in performing the act, enjoying the privilege or engaging in the occupation which is the subject of the excise, and the element of absolute and unavoidable demand, as in the case of a property tax, is lacking. 1 Cooley, Taxation § 46, at 132 (4th ed. 1924).

> If a tax is imposed directly by the legislature without assessment, and its sum is measured by the amount of business done or the extent to which the conferred privileges have been enjoyed or exercised by the taxpayer, irrespective of the nature or value of the taxpayer's assets, it is regarded as an excise; but if the tax is computed upon a valuation of property, and assessed by assessors either where it is situated or at the owner's domicil, although privileges may be included in the valuation, it is considered a property tax. 103 A.L.R. 19 (1936).

> "It is useless to press upon the attention of courts, as is often done, the idea that all taxes are really on the owners of property, either because of such ownership alone or the use of the property, in some way, so that in practical effect whatever be the form of the tax, let it be direct or indirect, in the ultimate it is on the property respecting the real basis thereof and on the person respecting the instrument that must necessarily discharge it; and that regardless of the form, the mere shadow of the matter, in substance the exaction should be regarded as a tax on property. All such methods of reasoning, however philosophical they may appear to be, have been met over and over again by the courts with the uniform result that the term 'taxes on property,' as used in the organic law, means taxes on things tangible or intangible, as distinguished from taxation on the right to use or transfer things, or on the proceeds of business in which the use of things is essential, . . . ." 103 A.L.R. 18, 20.

We have repeatedly rejected similar arguments that taxes were in reality taxes on property. See *Mahler v. Tremper,* 40 Wn.2d 405, 243 P.2d 627 (1952); *St. Paul & Tacoma Lumber Co. v. State,* 40 Wn.2d 347, 243 P.2d 474 (1952); *Klickitat Cy. v. Jenner,* 15 Wn.2d 373, 130 P.2d 880 (1942); *State ex rel. Hansen v. Salter,* 190 Wash. 703, 70 P.2d 1056 (1937); *Vancouver Oil Co. v. Henneford,* 183 Wash. 317, 49 P.2d 14 (1935); *Morrow v. Henneford,* 182 Wash. 625, 47 P.2d 1016 (1935). To the extent that the per curiam opinion in *Apartment Operators Ass'n v. Schumacher,* 56 Wn.2d 46, 351 P.2d 124 (1960), *may seem* to make statements inconsistent with the above outlined principles, it is hereby deemed not controlling in the instant case.

■ Since the tax involved herein is an excise tax, the constitutional provisions requiring uniformity do not apply. *St. Paul & Tacoma Lumber Co. v. State, supra; Vancouver Oil Co. v. Henneford, supra; Morrow v. Henneford, supra; Supply Laundry Co. v. Jenner,* 178 Wash. 72, 34 P.2d 363 (1934); *In re Ellis' Estate,* 169 Wash. 581, 14 P.2d 37 (1932); *Nipges v. Thornton,* 119 Wash. 464, 206 Pac. 17 (1922).

■ The superior court secondly held that the application of the retail sales tax violated the fourteenth amendment to the United States Constitution because the tax discriminated against floating hotels, since land-based hotels were not taxed in a similar manner. The trial court is in error in its holding. The law in this state is also clear in this area. See *Hemphill v. Tax Comm'n,* 65 Wn.2d 889, 400 P.2d 297 (1965); *Armstrong v. State,* 61 Wn.2d 116, 377 P.2d 409 (1962) (relying on and quoting from *Allied Stores of Ohio v. Bowers,* 358 U.S. 522 (1958)); *Texas Co. v. Cohn,* 8 Wn.2d 360, 112 P.2d 522 (1941). As the Supreme Court said in *Allied Stores*:

> "If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law." *Allied Stores of Ohio v. Bowers,* 358 U.S. 522, 527 (1958) (adopted in *Armstrong v. State,* 61 Wn.2d 116, 119, 377 P.2d 409, 411 (1962)).

The application of these principles has been repeated in our law. In *Hemphill, supra,* we upheld the exemption of bowling from a sales tax applied to the amusement industry. In *Armstrong, supra,* we upheld the application of a Business and Occupation Tax to general insurance agents, despite the fact that their counterparts working in insurance company branch offices were not so taxed. In *Texas Co., supra,* we upheld a tax on distributors of other types of fuel. Here, the legislature has imposed an excise tax on leases of tangible personal property, while leases of similar property, land based, carry no such tax. Nevertheless, the difference in type of property—*i.e.,* tangible personal property versus real property—would be in itself enough of a difference to uphold the classification. Thus, there is no denial of equal protection.

The respondent alleges an additional ground to uphold the action of the trial court. Frankly admitting that the trial court rejected this argument, it is pressed here by respondent with apparent sincerity. The argument, simply stated, is that there is no statutory authority for imposing a retail sales tax on leases. The first premise of the argument is that RCW 82.08.020 imposes a tax on "each retail sale." Then we must look to RCW 82.04.050 for the definition of a "retail sale." Here the respondent points out that in 1961 the legislature amended RCW 82.04.050 to include the following sentence:

> The term shall also include the renting or leasing of tangible personal property to consumers. Laws of 1961, ch. 293, § 1.

However, in the extraordinary session, this amendment was expanded, but limited to certain businesses. Laws of 1961, Ex. Ses., ch. 24, § 1. Thus, the respondent argues that, since his business or activity, *i.e.,* leasing of ships, was not listed, then there is no authority for the imposition of the tax.

■ The respondent's argument does not carry the day, for it ignores other sections of the statute. RCW 82.04.040 defines the term "sale" as follows:

> "Sale" means any transfer of the ownership of, title to, or possession of property for a valuable consideration and includes any activity classified as a "sale at retail" or "retail sale" under RCW 82.04.050. It includes *renting or leasing,* conditional sale contracts, leases with option to purchase, . . . . (Italics ours.)

With this definition in mind, we turn now to the general provisions of RCW 82.04.050:

> "Sale at retail" or "retail sale" means every sale of tangible personal property . . . other than a sale to . . . [herein listing exceptions].

Note that this definition uses the word "sale." Thus when the meaning of that word is added, we have:

> "Sale at retail" or "retail sale" means every sale [renting or leasing, RCW 82.04.040] of tangible personal property . . . other than a sale to . . . .

Thus, when this definition is used in RCW 82.08.020, it is clear that a lease of tangible personal property is subject to the retail sales tax. This reading gives meaning to RCW 82.04.040, RCW 82.04.050, and RCW 82.08.090 (which gives the tax commission power to provide regulations for the collection of retail sales tax on "leases of personal property."). This reading is also supported by two recent cases which upheld retail sales tax on leases of tangible personal property under the above outlined statutory language. *Lakewood Lanes, Inc. v. State,* 61 Wn.2d 751, 380 P.2d 466 (1963); *Gandy v. State,* 57 Wn.2d 690, 359 P.2d 302 (1961).

Finally, the respondent argues that the retail sales tax should not apply here because there was a sale (lease) for a resale (lease of the individual rooms to hotel guests). The respondent relies on RCW 82.04.050:

> "Sale at retail" or "retail sale" means every sale of tangible personal property . . . other than a sale to one who (a) purchases for the purpose of resale as tangible personal property in the regular course of business, . . . .

The respondent's argument might have some validity if the Dominion Monarch, Inc., had in turn subleased the whole ship to another party. However, the corporation did

not sublease the ship. Instead, it used the ship to provide lodging and other hotel services. Note that the exemption states that the sale (lease) must be to "one who (a) purchases for the purpose of resale as tangible personal property . . . ." In other words, the item purchased, or leased, must go on to the ultimate consumer in the same unit. There is no exemption from sales tax in the law for one who purchases (rents) tangible personal property for the purpose of using the same in the rendering of services. Also note that RCW 82.04.050(e) imposes a retail sales tax on the *lodging* offered by hotels. Thus, we simply have two different taxing incidents here: (1) leasing of the ship, and (2) offering of lodging and allied hotel services. As to the leasing of the ship, the Dominion Monarch, Inc., was the ultimate consumer, and there was no resale or releasing.

The judgment of the trial court is reversed, and the order of the tax commission is reinstated.

ALL CONCUR.