989 P.2d 542 (1999)
139 Wash.2d 604
HARBOUR VILLAGE APARTMENTS; Pinnacle Realty Management Company, a Washington corporation; Don Vell, a limited partnership; Gerald M. Anderson and Carol Anderson, a partnership; United States Fidelity and Guaranty Company, a Maryland corporation; Essex Property Trust, Inc., a Maryland corporation; Royce and Agdalee Church, as a marital community; Security Capital Pacific Trust, a Maryland investment trust, and that class of persons and entities similarly situated, Appellants,
v.
CITY OF MUKILTEO, a municipal corporation, Respondent.
No. 66920-1.
Supreme Court of Washington, En Banc.
Argued May 18, 1999.
Decided December 16, 1999.
*543 Groen & Stephens, John Maurice Groen, Bellevue, Robin L. Rivett, Pacific Legal Foundation, Sacramento, Amicus Curiae on Behalf of Pacific Legal Foundation.
William L. Cameron, Kennewick City Attorney, Kennewick, Amicus Curiae on Behalf of Association of Washington Cities.
Christine Gregoire, Attorney General, Donald F. Cofer, Cameron G. Comfort, Asst. Attorneys General, Olympia, Amicus Curiae on Behalf of Department of Revenue.
*544 Garvey, Schubert & Barer, William C. Severson, Norman J. Bruns, Seattle, for Appellants.
Ogden, Murphy & Wallace, James Edward Haney, Robert James McGill, Keating, Bucklin & McCormack, Michael Charles Walter, Seattle, for Respondent.
SANDERS, J.
The issue here is whether the City of Mukilteo's residential dwelling unit fee (RDU fee) is a constitutional excise tax or an unconstitutional property tax. The trial court held in favor of the city on summary judgment, characterizing the tax as an excise. However disappointed property owners sought and obtained direct review in this court. And we reverse.
Mukilteo licenses businesses located within its corporate limits for regulation and revenue. Mukilteo Municipal Code (MMC) § 5.04.010. A base license fee is imposed for each business location in the amount of $61.00; however for businesses which rent or lease real property an RDU fee of $80.60 per dwelling unit rented, leased, or offered for rent or lease is imposed in addition to the base license fee. MMC § 5.04.070(A)(3). Unlike rental housing businesses, other businesses are taxed on the basis of $41.60 per full-time equivalent employee in addition to the base license fee. MMC § 5.04.070(A)(4).
Appellant property owners do not challenge the $61.00 base license fee but claim the $80.60 per unit RDU fee is in reality a tax on the rental property itself, neither authorized by statute nor calculated on the constitutionally required basis for a property tax. Both sides concede the proper characterization of the tax is dispositive however differ as to how it should be characterized.
Appellants are residential apartment owners in Mukilteo. In late 1996 Mukilteo enacted Ordinance 905, which amended preexisting municipal code provisions regarding business licensure and regulation, subjecting the renting, leasing, or offering of residential dwelling units to licensure and taxation.
The RDU fee first became due in 1997, and applies to the rental units owned by apartment owners. The RDU fee is imposed on residential rental properties rented or offered for rent. It does not apply to owner-occupied residential property or to any nonresidential real estate. The fee is not measured by the value of the property or the amount of rent collected, but simply is an annual flat fee on each rental dwelling unit actually rented or offered for rent in Mukilteo. Although the stated purpose of Ordinance 905 is to license residential dwelling units for regulation and revenue, and not to impose a property tax, income tax, or any other tax upon the act of owning property (MMC § 5.04.010), we are asked to substantially and independently characterize the nature of the tax.
Aggrieved by the enactment of the RDU fee, the apartment owners commenced this action in the Snohomish County Superior Court, requesting: (1) a declaration the RDU fee is invalid; (2) an injunction barring Mukilteo from collecting the RDU fee; and (3) an order requiring Mukilteo to refund all RDU fees previously collected. The trial court, the Honorable Larry McKeeman, heard cross-motions for summary judgment and ruled in favor of Mukilteo, finding the RDU fee was an excise tax within Mukilteo's authority. However, apartment owners disagree.

ANALYSIS
First, although it is denominated a "fee" in Ordinance 905, it is clear the RDU fee is, in fact, a tax because its central purpose is to raise revenue. See Covell v. City of Seattle, 127 Wash.2d 874, 879-89, 905 P.2d 324 (1995). All parties appear to concede the RDU fee is a tax.
The central inquiry is therefore whether the RDU fee is an excise tax or a property tax. To answer this question we must recall "[t]he character of a tax is determined by its incidents, not by its name." Jensen v. Henneford, 185 Wash. 209, 217, 53 P.2d 607 (1936) (citations omitted).[1]
*545 The "incident" or measure of this tax is the mere ownership of that subclass of real property defined by its rental use. Each rental unit is directly taxed at $80.60 regardless of whether it is actually rented, the number of rental transactions associated with the property, or any other factors normally associated with ongoing business activity, including income. Nor is this RDU tax an excise on the mere privilege to conduct a rental businessthat is already separately taxed at the rate of $61.00 per business location. Rather the incident of this tax is on rental property as suchand a tax on rental property is no less a tax on property.
Both Jensen, 185 Wash. 209, 53 P.2d 607, and Apartment Operators Ass'n of Seattle, Inc. v. Schumacher, 56 Wash.2d 46, 351 P.2d 124 (1960), concerned a tax on rental income rather than a tax on the property itself. We held the distinction was without a difference as "the mere right to own and hold property cannot be made the subject of an excise tax, because to tax by reason of ownership of property is to tax the property itself." Jensen, 185 Wash. at 218, 53 P.2d 607 (citations omitted).
To the same effect is Schumacher where we held "a tax upon rents from real estate is a tax upon the real estate itself and an invalid property tax. Schumacher, 56 Wash.2d at 47, 351 P.2d 124. Once again, and obviously, a tax on the property itselfthat which we have hereis the ultimate evil which was only approximated in Schumacher.
The city misplaces its reliance on Black v. State, 67 Wash.2d 97, 406 P.2d 761 (1965). There Black was subjected to a $17,000 sales tax on a $425,000 ship lease payment because it was "an excise tax on the transaction of leasing tangible personal property. It is not a tax on property." Id. at 99, 406 P.2d 761. But here it is not the rental transaction which is taxedindeed there need not even be a rental transactionrather it is the fact of ownership of rental property which is taxed.
As this ordinance imposes a tax on rental property, and only rental property, it violates the constitutional prohibitions against nonuniform taxation of real property. Wash. Const. art. VII, § 1 (amend. 81).[2] As it is based on the number of units, not value, it violates the ad valorem requirement. Wash. Const. art. VII, § 2 (amend. 79). And because it is a nonstatutorily authorized tax on property, it is also in excess of the statutory, and hence, constitutional taxing authority of the municipality. Wash. Const. art. VII, § 5;[3]San Telmo Assocs. v. City of Seattle, 108 Wash.2d 20, 23, 735 P.2d 673 (1987) ("[W]hile Const. art. 7, § 9 and Const. art. 11, § 12 authorize the Legislature to grant municipalities the power under certain conditions to levy taxes, there must be a specific legislative pronouncement allowing for the tax in order for the tax to be valid." (citations omitted)); Hillis Homes, Inc. v. Snohomish County, 97 Wash.2d 804, 808, 650 P.2d 193 (1982).
The trial court is reversed, the RDU fee is invalidated, and this case is remanded to the trial court for further appropriate proceedings consistent with this opinion. Appellants shall recover their costs.
SMITH, JOHNSON, MADSEN, ALEXANDER, and IRELAND, JJ., concur.
*546 TALMADGE, J. (dissenting).
This case presents the controversy of whether a fee imposed by a city on the business of renting or offering for rent residential units and measured at a rate of $80.60 per dwelling unit is an excise or property tax.[1] If the fee is a property tax, various residential apartment owners (apartment owners) contend it violates the Uniformity Clause of Washington's Constitution, article VII, section 1. If an excise tax, they also contend the City of Mukilteo (Mukilteo) lacks statutory authority to impose such a fee and that the fee violates constitutional equal protection principles.
The majority pays scant attention to our recent cases differentiating between an excise tax and a property tax, and, in an opinion short on analysis, finds any tax that merely mentions property to be the equivalent of an ad valorem property tax. I dissent. I would affirm the trial court's judgment that Mukilteo's Residential Dwelling Unit (RDU) fee is an excise tax Mukilteo had the authority to impose.
We have previously set forth bases for determining whether a disputed fee is a property tax or an excise tax in a long series of cases involving a variety of taxes. See, e.g., State ex rel. Stiner v. Yelle, 174 Wash. 402, 405-07, 25 P.2d 91 (1933) (business and occupation tax measured as tax on gross income of business upheld as excise); Morrow v. Henneford, 182 Wash. 625, 626-31, 47 P.2d 1016 (1935) (sales tax upheld as excise); Vancouver Oil Co. v. Henneford, 183 Wash. 317, 320-21, 49 P.2d 14 (1935) (use tax upheld as excise); State ex rel. Hansen v. Salter, 190 Wash. 703, 705-06, 70 P.2d 1056 (1937) (motor vehicle tax measured as percentage of vehicle's value upheld as excise); City of Spokane v. State, 198 Wash. 682, 89 P.2d 826 (1939); (tax on use of personal property purchased at retail upheld as excise); Klickitat County v. Jenner, 15 Wash.2d 373, 380, 130 P.2d 880 (1942) (sales tax on courthouse construction upheld as excise); St. Paul & Tacoma Lumber Co. v. State, 40 Wash.2d 347, 354, 243 P.2d 474 (1952) (use tax on timber company's use of its logs and lumber products in its own operations upheld as excise); Mahler v. Tremper, 40 Wash.2d 405, 243 P.2d 627 (1952) (real estate conveyance tax upheld as excise); Black v. State, 67 Wash.2d 97, 99-100, 406 P.2d 761 (1965) (sales tax on lease of vessel as floating hotel upheld as excise); P. Lorillard Co. v. City of Seattle, 83 Wash.2d 586, 589-92, 521 P.2d 208 (1974) (city business tax on wholesalers of tobacco held an excise); High Tide Seafoods v. State, 106 Wash.2d 695, 699-700, 725 P.2d 411 (1986) (tax on transfer of commercial food fish held an excise), appeal dismissed, 479 U.S. 1073, 107 S.Ct. 1265, 94 L.Ed.2d 126 (1987); and Covell v. City of Seattle, 127 Wash.2d 874, 889-91, 905 P.2d 324 (1995) (fee on all residential property owners for improvement of city streets held a property tax). The majority declines to discuss these cases.
The trial court here relied on the analytical framework we provided in Black. Yet, the apartment owners assert that since Black concerned personal property, its analysis is limited to same, or in the alternative, they invite us to overrule Black.
Black involved a challenge to a State tax levied upon the lease of a ship used for lodging during the 1962 World's Fair. There, we distinguished an excise tax from a property tax in the following fashion:
[T]he obligation to pay an excise is based upon the voluntary action of the person taxed in performing the act, enjoying the privilege or engaging in the occupation which is the subject of the excise, and the element of absolute and unavoidable demand, as in the case of a property tax, is lacking. 1 Cooley, Taxation § 46, at 132 (4th ed.1924).
If a tax is imposed directly by the legislature without assessment, and its sum is measured by the amount of business done or the extent to which the conferred privileges *547 have been enjoyed or exercised by the taxpayer, irrespective of the nature or value of the taxpayer's assets, it is regarded as an excise; but if the tax is computed upon a valuation of property, and assessed by assessors either where it is situated or at the owner's domicil, although privileges may be included in the valuation, it is considered a property tax. 103 A.L.R. 19 (1936).
Black, 67 Wash.2d at 99, 406 P.2d 761.
In essence, we distinguished between excise taxes and property taxes in two ways. First, excises are imposed on the voluntary act of the taxpayer, which affords the taxpayer benefits from conducting the occupation, business, or other activity that triggers the taxable event. By contrast, property taxes are imposed on the mere ownership or possession of property, creating an "element of absolute and unavoidable demand[.]" Black, 67 Wash.2d at 99, 406 P.2d 761. Second, excises are directly imposed based upon the extent to which the taxpayer enjoys the taxed privilege, i.e., the volume of business done. By contrast, property taxes are imposed based upon the value of the taxpayer's assets or property. We have repeatedly recognized a property tax is imposed on the mere ownership of tangible and intangible property while an excise tax is levied against the exercise of particular aspects of ownership. See, e.g., Covell, 127 Wash.2d at 890-91, 905 P.2d 324; P. Lorillard Co., 83 Wash.2d at 590-91, 521 P.2d 208; High Tide Seafoods, 106 Wash.2d at 700, 725 P.2d 411. In doing so, we have repeatedly relied on the Black test; see, e.g., High Tide Seafoods, 106 Wash.2d at 699, 725 P.2d 411; Covell, 127 Wash.2d at 890, 905 P.2d 324; Clifford v. State, 78 Wash.2d 4, 8-9, 469 P.2d 549 (1970). It remains the law in Washington.
The apartment owners argue Black, if not overruled, should be limited to personal property. We should reject that contention. The treatises upon which we relied in Black, 1 Thomas M. Cooley, The Law of Taxation § 46, at 131 (4th ed.1924), and J.P. Massie, What is a Property Tax as Distinguished From Excise, License, and Other Taxes, 103 A.L.R. 19 (1936), addressed the difference between excise taxes and taxes on property.[2] They did not confine their analysis to personal property alone.
Moreover, the apartment owners cannot cite support in Washington case law for their viewpoint. While some of the cases we cited in Black do indeed address taxes on personal property, we also relied on Mahler v. Tremper, 40 Wash.2d 405, 243 P.2d 627 (1952), which rejected the distinction advanced by the apartment owners here between real and personal property:
We are committed to the proposition that a tax upon the sale of property is not a tax upon the subject matter of that sale. A sales tax upon personal property or a *548 sales tax upon real property is a tax upon the act or incidence of transfer. The imposition relates to an exercise of one of several rights in and to property. Imposition is not upon each and every owner merely because he is the owner of the property involved.
Id. at 409-10, 243 P.2d 627.
Although the test articulated in Black remains the law in Washington, the majority gives it short shrift by adopting the argument of both the apartment owners and amicus Pacific Legal Foundation that any tax on an aspect of property ownership must be deemed a property tax. This assertion is overly simplistic and unsupported in our case law. The majority speaks in utterly vague terms of the "incident [sic]" of the tax.[3] Majority at 545. The Black court, citing to the American Law Reports, cautioned against such a simplistic treatment of the distinction between property and excise taxes:
"It is useless to press upon the attention of courts, as is often done, the idea that all taxes are really on the owners of property, either because of such ownership alone or the use of the property, in some way, so that in practical effect whatever be the form of the tax, let it be direct or indirect, in the ultimate it is on the property respecting the real basis thereof and on the person respecting the instrument that must necessarily discharge it; and that regardless of the form, the mere shadow of the matter, in substance the exaction should be regarded as a tax on property. All such methods of reasoning, however philosophical they may appear to be, have been met over and over again by the courts with the uniform result that the term `taxes on property,' as used in the organic law, means taxes on things tangible or intangible, as distinguished from taxation on the right to use or transfer things, or on the proceeds of business in which the use of things is essential, ...." 103 A.L.R. 18, 20.
Black, 67 Wash.2d at 99, 406 P.2d 761.
The majority's view turns Washington tax policy on its ear, a view that cannot be squared with our case law. In Mahler, we specifically upheld the real estate excise taxa tax imposed upon a particular use of property, its transferas an excise tax. If a government may tax the sale of real property, certainly Mukilteo may impose an excise tax on the rental of real property. The mere fact the tax touches upon property or its use does not transform an excise tax into a property tax. High Tide Seafoods, 106 Wash.2d at 700, 725 P.2d 411 ("tax ... imposed upon an owner's exercising control over fish for purposes of disposing of them for profit., is an excise tax"); P. Lorillard Co., 83 Wash.2d at 591, 521 P.2d 208 (an excise tax does not become a property tax "simply because it is proportioned in amount to the value of the property used in connection with the privilege which is taxed") (quoting Ingels v. Riley, 5 Cal.2d 154, 160, 53 P.2d 939, 103 A.L.R. 1 (1936)); Clifford v. State, 78 Wash.2d 4, 469 P.2d 549 (1970) (interest received on incident to real estate sales contract held subject to business/occupation tax); Black, 67 Wash.2d at 98-100, 406 P.2d 761 (upholding tax on lease of tangible personal property). Likewise, cities may impose excise taxes on activities that by their nature require that they be carried out using real property. See, e.g., Hansen Baking Co. v. City of Seattle, 48 Wash.2d 737, 296 P.2d 670 (1956) (manufacturing bread); Klickitat County, 15 Wash.2d at 380, 130 P.2d 880 (courthouse construction).
The fact that Mukilteo's RDU fee affects one of the many attributes of real property ownership is not fatal to the tax. As we observed in Covell, the very definition of an excise tax involves an impost on a use of property:
when the tax is levied upon the exercise of only "one of the numerous rights of property," such as the right to transfer ownership, the tax may be said to be indirect and so valid although not apportioned.
Covell, 127 Wash.2d at 890-91, 905 P.2d 324. In fact, in Covell, the property owners challenged *549 a uniform, per-unit street utility charge Seattle had imposed on single-family homes and multifamily residences in order to finance street maintenance and construction. We explained the obligation to pay an excise tax is based on the voluntary action of the person taxed in performing the act or engaging in the occupation which is the subject of the tax, without the element of absolute and unavoidable demand based solely on the ownership of property, which is characteristic of a property tax. Id. at 889, 905 P.2d 324 (quoting the same test stated in High Tide Seafoods, 106 Wash.2d at 699, 725 P.2d 411, and Black, 67 Wash.2d at 99, 406 P.2d 761). We found the street utility charge to be an unlawful property tax because it was an absolute and unavoidable demand against property, not tied to the exercise of any right to use or transfer of property. Covell, 127 Wash.2d at 890-91, 905 P.2d 324.
The majority implies the RDU fee is invalid on the view it is a tax on rental income and thus a property tax, citing Jensen v. Henneford, 185 Wash. 209, 53 P.2d 607 (1936), and Apartment Operators Ass'n of Seattle, Inc. v. Schumacher, 56 Wash.2d 46, 351 P.2d 124 (1960). But these cases do not hold a municipal excise tax is lawful when imposed upon the privilege of doing business measured by the number of dwelling units rented, leased or offered for rent by a licensed business.
Jensen and Schumacher are distinguishable.[4] Furthermore, we cannot interpret Jensen outside its historical context. In Culliton v. Chase, 174 Wash. 363, 25 P.2d 81 (1933), we held a graduated net corporate income tax and graduated personal income tax adopted by initiative were unconstitutional because income was property subject to the Uniformity Clause, article VII, section 1. Jensen involved a challenge to additional legislation establishing a personal net income tax. One of the parties challenging the income tax was a property owner who received income from rents. Reiterating our earlier decision in Chase, we held personal income is property and therefore the tax was a property tax, not an excise tax. We rejected the notion the tax was distinguishable from personal income taxes because it was a tax on the privilege of receiving personal income rather than a direct tax on personal income. Although the Legislature characterized the tax as a tax on the privilege of earning income, such characterization did not alter the fundamental nature of the tax. A tax on the right to own or receive property, we held, is a tax on the property itself. Applying this general holding to the plaintiff who owned rental property, we held a tax upon rental income from real estate is a tax upon the real estate itself.
Schumacher involved a challenge to a statute imposing a business and occupation tax on the gross income of those engaged in the business of renting or leasing real property. With little analysis, and relying on previous decisions, including Jensen, we held a tax on rental income is a tax on the property itself. And since the tax at issue was not uniform, we held it was unconstitutional.
Both Jensen and Schumacher grounded their holdings on the notion that income is property, and the taxes at issue were directed at income. Mukilteo's RDU fee is not directed at income. The Jensen decision also acknowledged a tax truly levied for the *550 exercise of a privilege granted or permitted by the State is a valid excise tax, but it found the tax in that case was in reality based only on the ownership of property. Jensen, 185 Wash. at 218, 53 P.2d 607. The fee here does not depend solely on the ownership of property, but on the use being made of that property.
The majority contends that because the source of funding to pay the RDU fee will be rental income, such fee is in reality a tax upon rental income. The majority further contends that since the RDU fee is a tax on rental income, both Jensenholding "[a] tax upon rents from real estate is a tax upon the real estate itself[,]" 185 Wash. at 222, 53 P.2d 607and Schumacherholding "a tax on rental income is a tax on property, and not an excise tax[,]" 56 Wash.2d at 47, 351 P.2d 124control. But this is not the case. The RDU fee is not a tax on income generated by the rental units, it is a flat excise tax against each residential dwelling unit rented or offered for rent, whether such unit is generating income or not.[5]
Applying the Black test here, Mukilteo's RDU fee is a valid excise tax. As the apartment owners concede by their failure to contest the basic business license fee imposed on businesses leasing or renting dwelling units, the leasing of such units is indeed a business Mukilteo can license and regulate. The RDU fee is not levied on the mere ownership of dwelling units, but rather is determined by the number of dwelling units rented or offered for rent. In other words, it is based on the business-use being made of the property and is measured "by the amount of business done or the extent to which the conferred privileges have been enjoyed or exercised by the taxpayer" (i.e., the number of units rented). Black, 67 Wash.2d at 99, 406 P.2d 761. Unlike the street utility charge struck down in Covell, the RDU fee does not impose an absolute and unavoidable demand tied solely to property ownership, but is levied against the voluntary action of property owners in renting dwelling units.
Moreover, the RDU fee is not a tax on the mere ownership of the property because the tax is also dependent upon the voluntary act of renting the unit (a business purpose). See Clark v. City of San Pablo, 270 Cal.App.2d 121, 125, 75 Cal.Rptr. 726, 728 (1969) (holding the operation of an apartment house is a business that may be taxed under the general authority granted to municipal corporations under state law). For example, if an apartment owner decided not to offer two units for residential occupation, but used them instead for storage, such units would not be subject to the RDU fee. Thus, because the voluntary act of renting the residential dwelling unit is the event triggering application of the RDU fee, such fee is an excise tax and not a property tax. See Black, 67 Wash.2d at 99, 406 P.2d 761.
In light of our traditional test for an excise tax articulated in Black, Mukilteo's RDU fee constitutes an excise tax. As an excise tax, the RDU fee is not within the purview of the Washington's Uniformity Clause. High Tide Seafoods, 106 Wash.2d at 700, 725 P.2d 411; Cosro, Inc. v. Liquor Control Bd., 107 Wash.2d 754, 761, 733 P.2d 539 (1987); Black, 67 Wash.2d at 100, 406 P.2d 761 (citing cases).
Even if the RDU fee is an excise tax, the apartment owners contend the general licensing power granted to cities by statute does not include the power to tax the rental of real estate. The plain language of the relevant statutory grant says otherwise. RCW 35A.82.020 states in pertinent part:
A code city may exercise the authority authorized by general law for any class of city[[6]] to license and revoke the same for *551 cause, to regulate, make inspections and to impose excises for regulation or revenue in regard to all places and kinds of business, production, commerce, entertainment, exhibition, and upon all occupations, trades and professions and any other lawful activity ...
This statute grants licensing authority to Mukilteo as to all kinds of business and any other lawful activity. We long ago stated the rationale behind taxing the "privilege" of doing business in State ex rel. Stiner v. Yelle, 174 Wash. 402, 406-07, 25 P.2d 91 (1933), as follows:
It is true that the constitution defines property as anything subject to ownership and, in a sense, one's business and its earnings are owned by him, but the privilege of engaging in business and gainful pursuits under the protection of our laws is something which must and does exist before the business can be established, and something far and away beyond and above the mere ownership of a business. Man in a state of nature gained his sustenance by his strength or cunning, or both, and that which he so gained might, and no doubt often was, taken from him before he could use and enjoy it by someone stronger and more cunning. Hence, the established state enacted laws for the protection of human rights, the rights of property, and to prevent the weak or the credulous from becoming the helpless victims of the force or fraud of the strong and the cunning.
Peace officers and courts, among many other things, were established to this end, and every citizen is now measurably safe in pursuing any gainful occupation with the expectation that he will be by the state fully protected and made secure in his property investment, and also in his gains therefrom. This is the privilege, far above mere property, which it is now sought to tax to the end that it may pay, in some part, its fair share of the cost to the state of its creation and continuance.
Indeed, cities have broad powers to license businesses for regulation and revenue. See, e.g., Forbes v. City of Seattle, 113 Wash.2d 929, 944, 785 P.2d 431 (1990) (noting city councils, like legislatures, have broad discretion and power in making classifications for purposes of taxation); Commonwealth Title Ins. Co. v. City of Tacoma, 81 Wash.2d 391, 395-96, 502 P.2d 1024 (1972) (upholding city taxing ordinance, noting such ordinance is presumed constitutional and legislative power is particularly strong in the area of taxation); Oil Heat Inst. v. Town of Mukilteo, 81 Wash.2d 7, 9-11, 498 P.2d 864 (1972) (city's power to tax business is broad and its classifications and exemptions will be upheld so long as the taxes are not confiscatory). The apartment owners engage in the rental of dwelling units for the purpose of commercial gain. Clearly, they are engaged in the business of renting dwelling units.[7]
Under the plain language of RCW 35A.82.020, Mukilteo's authority to "impose excises for regulation or revenue" for "all ... kinds of business ... and any other lawful activity," though not unlimited, is indeed broad enough to cover the business of renting residential property.[8]
*552 Finally, the apartment owners assert the RDU fee "violates Equal Protection and the Privileges and Immunities Clause of the Washington Constitution", Br. of Appellants at 39. We apply minimum scrutiny to a legislative classification, upholding it unless it rests on grounds wholly irrelevant to the achievement of legitimate state objectives. In re Personal Restraint of Stanphill, 134 Wash.2d 165, 175, 949 P.2d 365 (1998). Additionally, with respect to challenges to excise taxes, we have traditionally afforded even greater deference to legislative classifications:
This being an excise tax, the legislature, under the 14th amendment to our state constitution, has very broad power, and we cannot interfere with that power except for arbitrary action, clear abuse, or constructive fraud appearing on the face of the act or from facts of which we may take judicial knowledge.
"A very wide discretion must be conceded to the legislative power of the state in the classification of trades, callings, businesses or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law."
State ex rel. Stiner, 174 Wash. at 407-08, 25 P.2d 91 (quoting in part Brown-Forman Co. v. Kentucky, 217 U.S. 563, 30 S.Ct. 578, 54 L.Ed. 883 (1910)). See also Hemphill v. Washington State Tax Comm'n, 65 Wash.2d 889, 891, 400 P.2d 297 (1965), appeal dismissed, 383 U.S. 103, 86 S.Ct. 716, 15 L.Ed.2d 615 (1966); Black, 67 Wash.2d at 100-01, 406 P.2d 761.
Specifically, the apartment owners claim the RDU fee "(1) ... is a regressive graduated tax on the rental activity, and (2) ... imposes a discriminatory tax burden on non-owner residents of the City." Br. of Appellants at 39. As to the first contention, the equal protection clause "creates no substantive rights." Vacco v. Quill, 521 U.S. 793, 799, 117 S.Ct. 2293, 2297, 138 L.Ed.2d 834, 841 (1997). "The calculus of effects, the manner in which a particular law reverberates in a society, is a legislative and not a judicial responsibility." Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 272, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). If the basic classification is rationally based, "uneven effects upon particular groups within a class are ordinarily of no constitutional concern." Id. at 272, 99 S.Ct. 2282. Here, neither the owners nor the tenants of "low rent dwellings" (Br. of Appellants at 39) are a suspect class. The apartment owners make no judicially cognizable challenge to Mukilteo's facially neutral flat per-unit tax on the basis of its regressive effect.
The second contention also fails. The stated purpose of the RDU fee is to exercise Mukilteo's power to license businesses for the purpose of both regulation and revenue. See Mukilteo Municipal Code § 5.04.010. Given this purpose, it is rational for Mukilteo to refrain from imposing its license fee on dwelling units not rented for profit. While rental units are unquestionably being used to generate business income, owner-occupied personal residences are not. Additionally, Mukilteo has no statutory authority to impose its license fee on personal residences.
As the RDU fee meets the legitimate purposes of both revenue raising and regulation, it cannot be said to be wholly arbitrary, thus it cannot be shown to violate federal equal protection or our State's privileges and immunities constitutional provision. The apartment owners' equal protection claim therefore fails.
Under Black and its progeny, the trial court properly found Mukilteo's RDU fee is an excise tax, which offends neither constitutional uniformity nor equal protection. This excise tax was within Mukilteo's power to assess incident to its statutory authority to license, regulate, and tax businesses. The majority's decision to employ a scant, if entirely novel and result-driven, test to differentiate between excise taxes and ad valorem property taxes will engender substantial confusion in Washington tax policy. Taxing a use of real property does not, as the majority would have us believe, convert an excise tax into a property tax. This result, driven by the willingness of some on this Court to *553 torture the law to confer special privileges on the ownership of property without regard to the letter of our Constitution, our statutes, or our case law, should be forthrightly rejected. I would affirm the trial court's grant of summary judgment to Mukilteo.
GUY, C.J., and KENNEDY, J.P.T., concur.
NOTES
[1] The nature of a tax is revealed by examining the subject matter of the tax and the incidents of the tax, "i.e., the manner in which it is assessed and the measure of the tax." Weaver v. Prince George's County, 281 Md. 349, 379 A.2d 399, 403 (1977). See also Reed v. City of New Orleans, 593 So.2d 368, 371 (1992) ("The nature of a tax is determined not by its title, but by its incidents, attributes and operational effect. The realities and substance of the tax must be examined, not its form."). Numerous jurisdictions follow this hermeneutic. See, e.g., Dawson v. Kentucky Distilleries & Warehouse Co., 255 U.S. 288, 292-93, 41 S.Ct. 272, 65 L.Ed. 638 (1921); City of Louisville v. Sebree, 308 Ky. 420, 214 S.W.2d 248, 253 (1948); Weekes v. City of Oakland, 21 Cal.3d 386, 579 P.2d 449, 452, 146 Cal.Rptr. 558 (1978); Goodenough v. State, 328 Mich. 56, 43 N.W.2d 235, 239 (1950); Armstrong v. Sewer Improvement Dist. # 1, 201 Okla. 531, 199 P.2d 1012, 1015 (1948); Franklin Soc'y for Home Bldg. Sav. v. Bennett, 282 N.Y. 79, 24 N.E.2d 854, 857 (1939). The "incident" of a tax (its "manner" and "measure") is that to which the tax attaches itself and burdens. See Oxford English Dictionary 152 (1933).
[2] "[A]ll real estate shall constitute one class...."
[3] "No tax shall be levied except in pursuance of law; and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied."
[1] The majority makes the astonishing observation that the property tax is an "evil." Majority at 545. Perhaps this is merely an unfortunate turn of a phrase. To the experienced observer of the world and the human condition, child abuse, domestic violence, rape, murder, environmental disaster, or nuclear holocaust might conceivably be deemed "evil" rather than the ad valorem property tax.
[2] Of particular interest among the American Law Review annotations are those citations noting annual flat taxes as excise taxes on the business-use of buildings affixed to real property. See, e.g., 103 A.L.R. 55 (citing Hodgson v. City of New Orleans (1869), 21 La. Ann. 301, noting city ordinance imposing $100 tax upon each and every warehouse where produce, goods, wares or merchandise are received for storage is a tax on the occupation of keeping warehouses and not on the warehouse itself); id. at 56 (citing State v. Bodden, 165 Wis. 75, 160 N.W. 1077 (1917), noting annual tax on commercially operated grain elevators and warehousestax being determined by amount of grain storedwas not a property tax but an occupation tax); id. at 58-59 (citing Municipality No. 2 v. Dubois, 10 La. Ann. 56 (1855), noting tax upon livery stable keepers is not a tax on property, but a tax on occupation, which is not subject to the constitutional limitations applicable to property taxation); id. at 59 (citing Williams v. State, 150 Ga. 480, 104 S.E. 408 (1920), noting tax on owners of houses knowingly allowing them to be used for purposes of lewdness or prostitution is not a tax upon property, but a tax upon the business they are engaged in); id. (citing City of Louisville v. Schnell, 131 Ky. 104, 114 S.W. 742 (1908), noting occupation tax requiring barbershops to pay $5 per year and $2 additionally for each chair was not a property tax, but a license fee properly graduated per number of barber chairs); id. (citing State v. Heymann, 178 La. 479, 151 So. 901 (1933), noting tax upon renting of office building equivalent to 1/10 of 1 percent of gross rents is an excise tax on the business of operating an office building, and not a direct tax upon the office building itself). Contrast id. at 61 (citing Thompson v. Kreutzer, 112 Miss. 165, 72 So. 891 (1916), noting tax imposed by statute providing for the levy of an annual privilege tax, or occupation fee, of 20 cents per acre upon each person or corporation pursuing the business of buying, owning or holding more than 1,000 acres of timberland is a property tax and not a privilege tax).
[3] The concept in tax policy is normally referred to as the "incidence" of the tax. See, e.g., Canteen Serv., Inc., v. State, 83 Wash.2d 761, 762, 522 P.2d 847 (1974) (The legal "incidence" of a tax falls upon the person or entity who has the legal obligation to pay the tax.).
[4] The continued validity of Jensen and Schumacher has been questioned. See High Tide Seafoods, 106 Wash.2d at 700, 725 P.2d 411 (noting Jensen has been modified by more contemporary cases); Shurgard Mini-Storage v. Department of Revenue, 40 Wash.App. 721, 723 n. 2, 700 P.2d 1176 (1985) (noting "continued validity of Schumacher is seriously questioned" by Black, but deciding the case on other grounds). The primary thrust of the amicus brief submitted by the Department of Revenue (DOR) is a request we overrule Schumacher. DOR acknowledges because the City's RDU fee is based on a fixed charge per rental unit, it is not a tax on the gross income from rental properties and thus Schumacher, which invalidated such tax on gross income from rental properties, does not apply. Nevertheless, DOR further argues the Schumacher decision was incorrect as to whether such gross income from rental properties may be taxed. As such, determination is not necessary for resolution of this case and is raised for the first time by amicus DOR; we decline to reach this issue. See Schmidt v. Cornerstone Invs., Inc., 115 Wash.2d 148, 165-66, 795 P.2d 1143 (1990) (a reviewing court is not obliged to decide all the issues raised by the parties, but only those which are determinative); Coburn v. Seda, 101 Wash.2d 270, 279, 677 P.2d 173 (1984) (new issues may not be raised for the first time by amicus); Schuster v. Schuster, 90 Wash.2d 626, 629, 585 P.2d 130 (1978) (same).
[5] Merely receiving income from a use of property does not convert an excise tax into an income tax. The apartment owners concede Mukilteo can license bowling alleys, for example. A business license fee exacted for every lane in Mukilteo is a tax on the privilege of the owner's use of the property for a bowling alley and derives from the property, but it is nonetheless an excise tax.
[6] The statute extends to code cities the same authority to tax granted to "any class of city." See RCW 35.22.280(32), 35.23.440(8), and 35.27.370(9) (granting the authority to first class cities, second class cities and towns, respectively, to license for the purposes of regulation and revenue, all and every kind of business authorized by law and carried out in such city or town). The grant of such licensing/taxing power to first class cities is liberally construed to carry out the objectives of chapter 35.22 RCW. RCW 35.22.900; Citizens for Financially Responsible Gov't v. City of Spokane, 99 Wash.2d 339, 343-44, 662 P.2d 845 (1983). Such liberal construction should apply to Mukilteo.
[7] Other jurisdictions have specifically held renting residential property is a business. See, e.g., Clark v. City of San Pablo, 270 Cal.App.2d 121, 125-26, 75 Cal.Rptr. 726, 728 (1969); City of Englewood v. Wright, 147 Colo. 537, 541-44, 364 P.2d 569, 572-73, 93 A.L.R.2d 1129 (1961) (citing cases); City of Portsmouth v. Citizens Trust Co., 216 Va. 695, 697-99, 222 S.E.2d 532 (1976).
[8] Mukilteo's RDU fee is not the aberration the apartment owners suggest. As pointed out in the amicus brief of Association of Washington Cities and Washington State Association of Municipal Attorneys at 13-15, similar business taxes have been collected in other Washington cities for decades. See, e.g., Kennewick Municipal Code §§ 6.08.165, .170, and .030; Longview Municipal Code § 5.68.040(1); and Woodland Municipal Code §§ 5.04.120D and .020(4) (collecting per-unit excises). See also Carnation Municipal Code §§ 5.12.020A and 5.12.140A, respectively (noting "[t]he owner of any apartment building containing four or more rental units shall be considered to be engaged in a `business'", and imposing a $50 annual fee upon same); Kent Municipal Code §§ 5.01.030 and .110A (Resolution 1311) (same).